CORNELIUS HIRTZ, Appellant, v. M. S. KOPPES et al., Appellees.
No. 40486.

FEBRUARY 10, 1931.

REHEARING DENIED MAY 6, 1931.

James E. Remley, and J. J. Locher, for appellant.

C. B. Paul, and C. J. Cash, for appellees.

MORLING, J.—The suit is in equity triable de novo. At the conclusion of plaintiff's evidence in the court below the de-

fendant moved to dismiss. He thereby chose to rest his case on plaintiff's evidence and is bound by the facts as proven thereby. Haggin v. Derby, 209 Iowa 939, and cases there cited. The testimony offered in behalf of plaintiff is not inherently incredible. On the contrary it is reasonable and in accordance with the implications of law from admitted facts. The evidence, so far as material, shows that plaintiff and his brother had a farm sale in 1912. Yarolem bought property at that sale and for its price gave to Hirtz Brothers his note with Streets as surety. Plaintiff tried to dispose of the note at the bank, but the bank did not approve of Streets as surety. Plaintiff testifies:

"Yarolem talked to me about Koppes (defendant) signing the note. Before I talked with Mr. Koppes on the road I learned that Mr. Koppes was the man to sign with Yarolem." "I saw Mat Koppes on the highway one evening a day or so after we were notified from the bank. I asked him if he was going to sign a note with Ed Yarolem. I did not have the note with me. It was at home. It was a bank note not filled out. I just had the first note that was given with Streets as security on it. I had tried to cash that note at the banks, Cascade and Baldwin. I had not seen Koppes at that time, saw him a day or so afterward. I had the second talk with Koppes on Sunday at the Yarolem house and he signed the note there that Sunday. * * * Q. Did Yarolem sign it that day about the same time, or did he sign it before? A. Well, that I could not say, could not say whether he signed it before Mat Koppes signed it." "I just happened to meet him (Koppes) on the road. * * * I told him about the Streets and Yarolem note, the other note, that I could not turn it in at the banks and I had a talk with Yarolem and told him about it and he said he could get M. S. Koppes to sign with him and I asked him if he would be satisfied to sign with Yarolem and he said he would. I just had one talk with him. I had another talk with Koppes down at Yarolem's house where Mat signed the note. * * * The note was dated the day of the sale. He agreed to sign that note that day, Sunday. I could not say he signed it that day but he agreed to sign it. * * * I do not remember when he signed it or where he signed it."

Yarolem had taken the property which he purchased on the date of the sale or the next day. Plaintiff did not try to

get the property back. Plaintiff testifies: "Mr. Yarolem bought stuff at the sale. Mr. Yarolem gave his note for the property purchased at the sale and had a signer on the note who was Tom Streets. This note was turned back and not received and Yarolem signed a second note with another signer who was Mr. Koppes, the defendant in this case. Exhibit A is the note that was signed by Mr. Koppes as signer for Yarolem. This note Exhibit A paid for the property that Mr. Yarolem purchased and received at our sale. The note Exhibit A was sold to the Cascade State Bank."

The note is dated March 19, 1912, for $550, payable to Hirtz Brothers, at the Baldwin Savings Bank, is signed by Ed Yarolem and M. S. Koppes and was endorsed "Hirtz Brothers."

At this point we notice the suggestion that defendant signed as accommodation maker for the plaintiff and that as to plaintiff there was no consideration for his signature.

While the evidence does not expressly show that the terms of the farm sale were that purchasers should pay cash or by bankable note it is a matter of common knowledge that such terms are usual, if not universal. The reasonable inference from the evidence is that Yarolem understood he was to give a bankable note and when he was informed that Streets' signature was not acceptable he proposed defendant as surety. It does not appear that plaintiff had any reason to ask or did expressly or impliedly ask defendant to accommodate plaintiff. The giving of accommodation paper is in substance a loan of credit to the party accommodated. Plaintiff is not shown to have needed or desired a loan of defendant's credit. Yarolem was in that need. It was assumed in the conversation between plaintiff and Yarolem that plaintiff required another surety in place of Streets. It was Yarolem, not plaintiff, that suggested Koppes. It was because Yarolem had suggested Koppes in place of Streets that plaintiff when he met Koppes asked Koppes "if he would be satisfied to sign with Yarolem and he said he would." The note was not then signed but when the three later met at Yarolem's house, the note dated back to the date of the sale was signed or agreed to be signed. The new note was given in lieu of the first note, not for accommodation use of the plaintiff at the bank, but "for the property that Yarolem purchased and received at our sale." Koppes signed not for plaintiff's accom-

540

modation but "signed for Yarolem." When the parties were notified that the note was due defendant did not claim that he signed it to accommodate plaintiff. After they had each paid half the note defendant "said he would never forget him (plaintiff)" referring to his paying half the note.

The suggestion that defendant signed for plaintiff's accommodation is without foundation. He was surety and understood to be surety to Hirtz Brothers for Yarolem. See Pennington v. Nelson, 208 Iowa 1310; Farmers L. & T. Co. v. Brown, 182 Iowa 1044, 1055-6; Peoria Mfg. Co. v. Huff, 63 N. W. 121 (Neb.).

 There was a consideration for the note. Plaintiff by accepting it gave up not only his other remedy against Yarolem but gave up the note with the signature of Yarolem and Streets.

Plaintiff's testimony to the agreement between plaintiff and defendant for the payment of the note is that defendant "came over and he asked me if I would pay half of the note for him. * * * I didn't promise him at the time that I would, I said, 'Go ahead and sue, Yarolem is worth it, you will get it sometime.' 'Well,' he says, 'I don't like to sue Yarolem,' he says. * * * And he says, 'If you will pay half, I will pay the other half and we will try and collect it and we will divide the money.' Well, (I?) didn't promise him at the time, so it ran on for a few days and so they got us to come down to their place, me and my wife. * * * He says, 'For God's sake' he says, 'Will you pay half that note for me, Neal, Katie is just crying herself sick.' * * * That's his wife. 'Well,' I says, 'I don't know, Mat, we will talk it over,' and we went in, and finally we did agree to pay half for him providing he would do the right thing with us afterwards. * * * Q. The day that it was paid off, did Mr. Koppes come to your place? A. Yes, sir. Mr. Koppes came over that morning and rode to Cascade with me and my wife. * * * We went to the Dehner bank. * * * We asked for the note and Mr. Koppes and myself paid the note there. * * * I paid one-half and Mr. Koppes paid the other half. * * * At the time the note was paid, my wife made the remarks that we take this note and sue on it and get a judgment. She says Yarolem will be worth something some day and she says, 'Now whichever one receives anything on this, you know it should be equally

divided,' and Mr. Dehner * * * says, 'Yes, sir,' he says, 'that is a partnership deal' he says, 'and that's what you boys has to do.' * * * Mat Koppes * * * says, 'yes, sir,' he says, 'that's right' * * * I says to Mr. Koppes, I says, 'I don't think we will be out anything on this for Mr. Yarolem's father was pretty well to do,' and I says, 'we will get it some day' I says 'providing we sue and take judgment on this note.' * * * Mr. Koppes said that would be all right, he says, 'we will do it some day.' ''

Defendant urges that the agreement that plaintiff and defendant should divide equally anything received from Yarolem on the note was as to defendant without consideration.

In the first place, plaintiff was an endorser to the bank for both Yarolem and Koppes, who were the makers and who were both liable to plaintiff as makers. Plaintiff was liable to the bank, but his liability was secondary to that of defendant. As between plaintiff and defendant plaintiff's liability was secondary and defendant had no right to look to plaintiff for payment. The payment which plaintiff made he made for the benefit of defendant and Yarolem. The payment which defendant made he made for the benefit of Yarolem. The law implied a promise on the part of Yarolem to re-imburse each for the amount paid by him with six per cent interest. 50 C. J. 253, 255; Bruguier v. Goewey, 39 Iowa 190. Each upon payment had a cause of action against Yarolem therefor. Johnston v. Belden, 49 Iowa 301; Searing v. Berry, 58 Iowa 20. We may say parenthetically in response to suggestion in argument by defendants that the amount legally owing by Yarolem to each at the time of defendants' collection of the $700 in controversy was about $485. Defendant, pursuant to the understanding with plaintiff, however, procured judgment against Yarolem on the note itself, which largely exceeded the amount of their legal cause of action.

The agreement between plaintiff and defendant for a division of what should be realized from Yarolem was an agreement which the law would imply. The express agreement went farther. It was that they should not merely sue on their cause of action for money paid but upon the note and obtain judgment. This would imply an agreement on the part of the plaintiff to pay his share of the expense.

Furthermore, a contract made verbally, or by corre-

spondence, is not always completed by contemporaneous acceptance of the proposal. Defendant's proposal in this case was "If you will pay half I will pay the other half and we will try and collect it and we will divide the money." There never was any other proposal. Plaintiff says he did not promise defendant at that time so it ran on for a few days and "we did agree to pay half for him providing he would do the right thing with us afterwards." The talk in the bank on the occasion (though it was after) the note was paid was a re-iteration of this original proposal and acceptance. Evidence of this proposal was received without objection and if objected to was relevant to the question of what the agreement actually was.

In Bruguier v. Goewey, 39 Iowa 190, plaintiff on the request of Gregory made in defendant's presence paid a note made by defendant (and apparently also by Gregory). The note was then handed to defendant and by defendant to plaintiff who gave it back to defendant, telling defendant to "pay me the amount of the note sometime." It was held that the jury might find that defendant by his silence "promised to so pay it."

"Both a request and a promise can fairly be inferred from the facts of the case. * * * The rule is well settled that where one person voluntarily pays a debt which another was compellable to pay, he may recover the amount so paid, upon proof of an express promise by the other to repay him—the law implies the request to pay, from the express promise. Windsor v. Savage, 9 Metcalf, 348; Lewis v. Lewis, 3 Strobhart, 530. In other words, and generally, there are three classes of cases wherein an executed or past consideration will support an action; first, where one is compelled to pay a debt for another, which such other was compellable to pay; second, where the act done or money paid was for the benefit of another, and he afterwards accepted and enjoyed it; third, where one voluntarily pays a debt which another was compellable to pay. In the first two, the law implies both a request and a promise, but in the last an express promise must be shown. In this case, as we have seen, the jury might well find both a request and promise in fact."

See, also, Doyle v. Reilly, 18 Iowa 108.

Plaintiff was not compelled to make the payment and to acquire thereby a claim against Yarolem, but it was, as he says,

out of good nature. His charitable motive in no wise diminished or waived his right. It was his right to receive one-half òf the benefit of all sums thereafter realized from Yarolem—a right which he not only did not waive but which defendant recognized and promised to allow. The promise was enforcible. Edson v. Poppe, 124 N. W. 441, 24 S. D. 466; Doyle v. Reilly, 18 Iowa 108, 113; Baker v. Gregory, 28 Ala. 544, 65 Am. Dec. 366; Atlantic Pebble Co. v. Lehigh Valley R. Co., 98 Atl. 410, 89 N. J. L. 336.

Defendant obtained the note, got judgment upon it for the full amount in November, 1921, $1047, and costs, settled the judgment for $700 and now claims the right on this undisputed evidence to retain the whole amount recovered—more than he paid with interest. Clearly if proof of an express agreement were required the undisputed evidence proves it and proves not merely implied but actual consideration. By the express as well as the implied agreement plaintiff and defendant were equal owners of a cause of action against Yarolem for the amount which they paid and each was entitled to one-half of all that should be recovered upon the cause of action.

■ Defendant says that his oral promise was within the statute of frauds, ''being the promise to pay the debt of another.'' Plaintiff and defendant were paying defendant's debt on the note—a debt for which, as between him and plaintiff, defendant was primarily liable. Defendant's· promise bears no semblance to one to pay the debt of another. Plaintiff and defendant by their joint and equal payment of the debt for which Yarolem as to both of them was primarily liable jointly acquired in equal shares property in the form of a cause of action against Yarolem.

■ Plaintiff asserts that the action is barred by the statute of limitations. The cause of action did not accrue until defendant made the collection which was within a few months prior to the commencement of the action. Defendant also contends that the note was signed on Sunday. The contention is unsustained by the proof. If proved defendant nevertheless has in his possession money received for and belonging to plaintiff by virtue of their discharge of the obligation which defendant had acknowledged. Plaintiff's cause of action is not on the note but on the express and implied agreement by which plaintiff

and defendant became the owner of a cause of action which Yarolem, to the extent of $700, has acknowledged and paid. See Bowlin Liquor Co. v. Brandenburg, 130 Iowa 220. The case is simply one in which the defendant has received money which in equity and good conscience he is not entitled to retain but ought to pay to plaintiff, and for which plaintiff is entitled to maintain on the facts pleaded and proved an action for money received. See 41 C. J. 28, et seq.—Reversed.

FAVILLE, C. J., EVANS, DE GRAFF, KINDIG, and WAGNER, JJ., concur.