JOHN A. PARKS CO. *v.* GENERAL DISCOUNT CORP.

CADILLAC INSURANCE AGENCY *v.* SAME.

1. TRIAL—MOTION TO DISMISS—EVIDENCE.

On motion to dismiss at conclusion of plaintiff's evidence the testimony introduced on his behalf must be considered in the light most favorable to his contentions.

2. SAME—MOTION TO DISMISS—DEFENDANT BOUND BY FACTS PROVED IN PLAINTIFF'S CASE.

On defendant's motion to dismiss at conclusion of plaintiff's evidence, defendant chooses to rest his case on such evidence and is bound by the facts proven thereby.

Distinction between a trust and a debt, see 1 Restatement, Trusts, § 12.

3. FRAUDULENT CONVEYANCES—CONTRACTS—ANTECEDENT DEBTS DIS-
CHARGED IN BANKRUPTCY—GOOD FAITH.

>   Agreement relative to conduct of small loan and automobile
>   finance business whereby profits therefrom were to be applied
>   in a proportion to be determined by the creditor toward reduc-
>   tion of indebtedness which had once been discharged in bank-
>   ruptcy but which agreement also safeguarded the interests of
>   the creditor which advanced all funds necessary to do busi-
>   ness *held,* under evidence presented, not to have been entered
>   into in bad faith in suit by debtor's judgment creditors
>   against cooperating creditor.

4. SAME—PREFERENCES—EVIDENCE.

>   In suit to impress a trust upon certain assets claimed by plaintiff
>   judgment creditors to have been transferred by debtor in
>   fraud of their rights, record *held,* to support claim that debtor
>   had accorded a preference to certain creditors.

5. SAME—PREFERENCES.

>   A debtor has the right to give preference to a certain creditor
>   to the exclusion of all others.

6. CORPORATIONS—PREFERENCES TO OFFICERS AND DIRECTORS—IN-
SOLVENCY.

>   A corporation may make preferential payment to its officers and
>   directors even though such preferences are given on the eve
>   of insolvency and in payment of antecedent debts.

7. SAME—CREDITORS—INSOLVENCY—EQUITABLE LIENS.

>   The creditors of an insolvent corporation are not entitled to a
>   *pro rata* share of its assets as they do not, as mere creditors,
>   have an equitable lien upon such assets.

8. SAME—OFFICERS—TRUSTS—LIENS.

>   The officers of a corporation act in a fiduciary capacity in respect
>   to its property in their hands, and may be called to an account
>   for fraud or sometimes even mere mismanagement in respect
>   thereto; but as between itself and its creditors the corporation
>   is simply a debtor, and does not hold its property in trust, or
>   subject to a lien in their favor, in any other sense than does
>   an individual debtor.

9. SAME—PARENT AND SUBSIDIARY—SEPARATE ENTITY—OFFICER AND
DIRECTOR PERSONNEL—FRAUD.

>   The separate corporate entities of a parent and subsidiary cor-
>   poration will not be disregarded and the parent corporation
>   will not be held liable for the acts and obligations of its sub-

sidiary corporation, notwithstanding the facts that the latter was controlled by the parent through its stock ownership and that the officers and directors of the parent corporation were likewise officers and directors of the subsidiary, in the absence of proof that the subsidiary was formed for the purpose of perpetrating a fraud and that domination by the parent corporation over its subsidiary was exercised in such manner as to defraud complainant.

10. SAME—DISSOLUTION OF SUBSIDIARY—FRAUDULENT CONVEYANCES. In suit by judgment creditors to recover amount of judgments against dissolved corporation from defendant, who is claimed to have been a parent corporation of debtor, evidence *held,* insufficient to show that relation of parent and subsidiary existed or that either defendant had assets belonging to debtor corporation.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted April 17, 1940. (Docket Nos. 10, 11, Calendar Nos. 40,640, 40,641.) Decided September 6, 1940. Rehearing denied November 13, 1940.

Separate bills by John A. Parks Company and Cadillac Insurance Agency against General Discount Corporation and General Finance Corporation to impress a trust upon certain funds alleged to be in the hands of the defendants. Bills dismissed. Plaintiffs appeal. Affirmed.

*David I. Hubar (Milton M. Maddin and Sidney C. Bernstein,* of counsel), for plaintiffs.

*Oxtoby, Robison & Hull,* for defendant General Discount Corporation.

*Bratton & Bratton,* for defendant General Finance Corporation.

SHARPE, J. These cases come to us upon appeal from orders dismissing plaintiffs' bills of complaint.

By stipulation of counsel it was agreed that both cases be tried at the same time and both are consolidated upon appeal.

October 10, 1935, John A. Parks Company, Inc., recovered judgment in the circuit court of Wayne county against F. W. Young, Inc., a Michigan corporation, in the sum of $2,463.12, and on the same date the Cadillac Insurance Agency, Inc., recovered a judgment against F. W. Young, Inc., in the amount of $1,648.18.

The charter of F. W. Young, Inc., expired August 30, 1933, and on March 16, 1936, the two instant cases were commenced in the circuit court of Wayne county. The plaintiffs sought by proper allegations a decree whereby the defendants would be held liable for the amounts of the said respective judgments on the theory that the defendants have assets in their possession, custody or control belonging to F. W. Young, Inc., which in equity ought to be applied in satisfaction of their judgments. The causes were referred to a circuit court commissioner to make a finding of facts and law.

The following finding of facts made by the commissioner and confirmed by the trial court are adopted by this court:

"It is necessary briefly to trace the history of F. W. Young, Inc., its successors and affiliates, as well as the predecessors and affiliates of the defendant corporations, that the respective theories of the parties to this litigation may more easily be understood.

"Sometime before March 27, 1931 (date of incorporation of F. W. Young, Inc.), W. R. Young was conducting, in the city of Detroit, a so-called 'large loan business,' handling automobile paper for discount, under the corporate name of W. R. Young Finance Company. At the same time and place, W. R. Young,

individually, was conducting a so-called 'small loan business' in the discounting and rediscounting of automobile paper. 'Small loans,' as recognized by these companies, referred to loans of less than $300 in amount, and 'large loans' referred to loans in excess of $300. These two concerns at that time did business or discounted automobile paper of their customers with various other auto finance companies, among them being Federal Discount Corporation and Federal Finance Corporation. The depression was on, and eventually W. R. Young Finance Corporation became bankrupt and was wound up in receivership. W. R. Young, individually, also became bankrupt and eventually secured his discharge in bankruptcy from the proper court, in the city of Detroit. Because of the financial dealings between W. R. Young Finance Corporation and W. R. Young, individually, with Federal Discount Corporation, W. R. Young, individually, became indebted to Federal Discount Corporation in the approximate amount of $29,000, which was listed in his bankruptcy schedules, as one of his liabilities. * * *

"After W. R. Young, individually, was adjudicated a bankrupt, * * * negotiations (were entered into) with the defendants, Federal Discount and Federal Finance Corporations, to resume business on the understanding that, if he were aided by said Federal Discount Corporation and Federal Finance Corporation by proper financing and supervision, he would pay to said corporations the aforesaid $29,000, which he individually owed them at the time of his bankruptcy. This objective was carried out.

"To effectuate this objective, W. R. Young caused to be incorporated under the laws of the State of Michigan, on March 27, 1931, the company herein known as F. W. Young, Inc., with the consent and approval of the officers of Federal Discount Corporation and Federal Finance Corporation. F. W. Young, Inc., filed its articles of incorporation March

27, 1931, and, until its charter expired August 30, 1933, by proper amendment filed shortening the life of the corporation, carried on a 'small loan' business in automobile refinancing. Part of its board of directors and officers consisted of certain officers and employees of Federal Discount Corporation and Federal Finance Corporation. In other words, the board of directors of Federal Discount Corporation and Federal Finance Corporation on one side, and F. W. Young, Inc., on the other, were interlocking.

"Upon the organization of F. W. Young, Inc., the capital stock consisted of 500 shares. Four hundred and sixty shares were issued to W. R. Young, individually, and the other 40 shares were issued to other parties for the purpose of completing the organization. At the commencement of business, F. W. Young, Inc., had no assets other than some accounts of F. W. Young,—small loans—it did not take over any of the assets of W. R. Young Finance Company, a corporation. F. W. Young, Inc., was organized for the purpose of conducting a 'small loan business' in automobile paper, *i.e.,* loans of less than $300. * * * W. R. Young, individually, after the incorporation of F. W. Young, Inc., conducted the large loan business under the name of R. C. Scott, and further, he (W. R. Young) conducted the insurance end of such business under the name of R. C. Scott doing business as J. C. Page Agency. W. R. Young had a brother whose name was F. W. Young. It was the latter whose name was taken when F. W. Young, Inc., was organized.

"In due course, the rights and/or liabilities of defendants, Federal Discount Corporation and Federal Finance Corporation, became the assets and liabilities of defendants, General Finance Corporation and General Discount Corporation. So that, in the last analysis, the defendants Federal Discount Corporation and Federal Finance Corporation pass out of the picture, and in their place and stead, so

far as this lawsuit is concerned, General Finance Corporation and General Discount Corporation are the true defendants.

"As between defendants and F. W. Young, Inc., the working arrangement was as follows: A customer would call for loan of $300, collateraled by automobile paper, secured by the car in question. F. W. Young, Inc., through its proper officers or agents, would pass upon the proposed loan, as to its soundness. F. W. Young, Inc., had no money. The latter would rediscount the paper with the defendants, Federal Discount Corporation and/or their successors, General Discount Corporation, secure the latter's check for the net amount involved, deposit that check in the F. W. Young, Inc., account, and then draw their (latter's) check to the customer for the amount involved. These loans carried three per cent. per month. When these loans were repaid monthly, they were repaid by the customer at the office of F. W. Young, Inc., a certain amount being paid on the principal, plus the interest charge. F. W. Young, Inc., then transmitted the full amount of the principal collected to the Federal and/or General Discount Corporation, together with one and one-quarter per cent. of the interest collected, as their share of the profit or charge, and would retain for its cost or profits out of the interest charged, the balance of one and three-quarters per cent. This was held for overhead and expense, et cetera. When this paper was received by F. W. Young, Inc., and discounted with Federal Discount Corporation and/or General Discount Corporation, it became the paper of the latter companies upon which they were liable. This procedure was followed between F. W. Young, Inc., and the defendant corporations during the life of the former. At the wind-up of the corporate affairs of F. W. Young, Inc., such paper, in the amount of $69,284.03, belonged to defendant discount corporation.

"The practice followed on the 'large loans' between the defendants and W. R. Young, doing business as R. C. Scott, and W. R. Young under the name of R. C. Scott, doing business as J. C. Page Agency, was as follows: If a customer borrowed $500, a charge of 25 per. cent. was made for the use of the money, and this added to the $500, made $625 for which the customer gave his note with the proper collateral. * * * The $500 plus the insurance, recording fee and expenses was deducted from the face of the note, leaving a fixed possible profit for the transaction. The money to finance this loan was furnished by the Federal Discount Corporation and/or General Discount Corporation, and for this service, that is, advancing the money, the Federal Discount Corporation and/or General Discount Corporation received a certain part of the contemplated profit figured on a fixed interest rate, and the balance was retained by defendants, to the credit of W. R. Young, doing business as R. C. Scott and J. C. Page Agency. The part of the profit, if any, belonging to W. R. Young, doing business as R. C. Scott and J. C. Page Agency, was retained by defendants, Federal Discount and General Discount Corporation and reflected by certain credits. Sufficient money always was kept on hand by W. R. Young to carry on the overhead of the business. F. W. Young, Inc., W. R. Young, R. C. Scott, and J. C. Page Agency all occupied the same office.

"Under date of November 20, 1931, some seven or eight months after the incorporation of F. W. Young, Inc., the parties hereto reduced their working agreement to writing. * * *

"The books of F. W. Young, Inc., are not in evidence and apparently, after diligent search and inquiry, cannot be located and produced."

During the month of March, 1933, a settlement was reached between W. R. Young and the General Dis-

count Corporation whereby the General Discount Corporation paid W. R. Young $8,000. As to this the following finding of facts are adopted:

"That the said $8,000 was paid to W. R. Young during the bank holidays of 1933; that payment was made in currency, and it was money collected by W. R. Young in one of his various capacities referred to in these findings. It arose out of the collections made by W. R. Young or one of his affiliates from paper that had previously been discounted with the defendant discount company. What part of said money, viz., $8,000, was collected by F. W. Young, Inc., from the small loan business, or by W. R. Young doing business as R. C. Scott (large loans) or J. C. Page Agency does not appear from the evidence.

"That if said $8,000, or any part of it, were assets of F. W. Young, Inc., the money was transferred and, so far as the proofs show, still is in the care, custody and control of W. R. Young individually.

"That at the time the said $8,000 was paid over to W. R. Young, individually, namely, on or about March 11, 1933, the paper that was previously turned over by F. W. Young, Inc., to the defendant discount company in the then outstanding amount of $69,284.03 was paper belonging to defendant discount company, which it had bought or paid for in prior dealings and was not an asset of F. W. Young, Inc.; the money to discount this paper was furnished by defendant discount corporation.

"That at said time, March 11, 1933, F. W. Young, Inc., had no assets so far as the proofs show other than some furniture and books of accounts.

"That at the time, March 11, 1933, the said $8,000 was paid over on a settlement to W. R. Young, the proofs failed to show that any of the defendant corporations had any assets in their possession, custody and control belonging to F. W. Young, Inc., nor do the proofs show that subsequent to that time any assets came into the hands or the control of the de-

fendant corporations belonging to F. W. Young, Inc.

"That the debt of $22,091.68 that W. R. Young owed Federal Discount and/or Federal Finance Corporation at the time of the organization of F. W. Young, Inc., could legally be and was paid by W. R. Young, personally, to the defendant corporations either by himself, or by or through his affiliated businesses wherein he was doing business as R. C. Scott, or doing business under the name of R. C. Scott as the J. C. Page Agency.

"The proofs fail to show what profits, if any, W. R. Young made or had by virtue of his doing business as R. C. Scott and/or R. C. Scott, doing business as J. C. Page Agency, and the proofs fail to show that even though R. C. Scott or J. C. Page Agency had assets that there was ever a proper assignment of these assets to F. W. Young, Inc., or that F. W. Young, Inc., ever had any right to any moneys or assets that were owned or controlled individually by W. R. Young or W. R. Young doing business as R. C. Scott or J. C. Page Agency. * * *

"That before or at the time defendants settled, March 11, 1933, with W. R. Young, the latter gave defendants a list of all creditors of F. W. Young, Inc. All these creditors have been paid. Neither of plaintiffs were listed by W. R. Young at that time as creditors of F. W. Young, Inc. There are now no unsatisfied creditors of F. W. Young, Inc., save plaintiffs in the instant cause.

"That at the conclusion of the corporate life and affairs of F. W. Young, Inc., all outstanding accounts previously rediscounted by defendant discount corporation were held and/or turned over to said defendant corporation as its property."

When the cause came on for trial and at the close of plaintiffs' proof, the defendants made motions to dismiss plaintiffs' bills of complaint. The motions were granted and on January 8, 1938, decrees were entered which contained the following provisions:

"It is therefore the finding of this court that neither of the defendants herein have any assets belonging to F. W. Young, Inc., a Michigan corporation, in their respective possessions, custody or control, and

"It is the further finding of this court that neither of the defendants herein are responsible for the debts of F. W. Young, Inc., and it further appearing that the plaintiff herein has not by the proofs introduced in support of the allegations contained in the plaintiff's bill of complaint sustained the burden of proof."

Plaintiffs appeal and contend that all income derived from the loan business conducted in the name of R. C. Scott must be considered as part of the income of F. W. Young, Inc.; that the transfer of the gross profits of the R. C. Scott Company was a fraud upon plaintiffs; that the transfer of assets of F. W. Young, Inc., to General Discount Corporation was in fraud of plaintiffs as creditors of the former corporation; that the evidence establishes actual intent to defraud plaintiffs as creditors of F. W. Young, Inc.; and that a creditor has the right to follow the assets of his debtor which have been fraudulently conveyed.

It is a well-established principle that on motion to dismiss, the testimony introduced on behalf of plaintiff must be considered in the light most favorable to plaintiff's contentions.

In *Hirtz* v. *Koppes,* 212 Iowa, 536 (234 N. W. 854), the court said:

"At the conclusion of plaintiff's evidence in the court below the defendant moved to dismiss. He thereby chose to rest his case on plaintiff's evidence and is bound by the facts as proven thereby."

Decision in this case centers around the purpose and effect of the agreement of November 20, 1931.

This agreement was entered into between the Federal Discount Corporation, William R. Young, and Ralph C. Scott and provided that the profits of the F. W. Young Corporation, the R. C. Scott Company and the J. C. Page Agency, all of which companies were largely owned by William R. Young, were to be applied to the reduction of the indebtedness of William R. Young to the Federal Discount Corporation.

It provides:

"That said second party (William R. Young) shall cause 420 shares of stock owned or controlled by him to be properly assigned and delivered to first party (Federal Discount Corporation) to be held by said first party and voted under its direction until all of the said indebtedness of second party to first party together with all interest, costs of collection, et cetera, shall be paid in full.

"That such proportion of the profits of F. W. Young, Inc., as in the opinion of the board of directors of said F. W. Young, Inc., may be properly used without jeopardizing the corporation's financial status, shall be from time to time applied toward a reduction of second party's indebtedness to first party.

"That a carrying charge, from and after March 27, 1931, of one per cent. per month, for the first year, and three-fourths per cent. per month thereafter, on the unpaid balance of the indebtedness of W. R. Young, shall be figured on the said indebtedness plus all costs and expenses arising in connection with the liquidation of the original amount and plus all expenses incurred by first party in connection with a certain land contract concerning 40 acres of land in Oakland county assigned by second party to first party, same consisting of payments of principal, interest, taxes, et cetera, accruing pursuant to said contract.

"It is further understood and agreed that the large loan and finance business conducted by third party under the trade name of R. C. Scott is for the benefit and use of second party and that second party is entitled to the profits arising therefrom, except as herein provided; and the same is true with respect to the insurance agency conducted by third party under the assumed name of J. C. Page Agency. Provided, however, that first party shall have the exclusive right to determine, from time to time, what proportion of the profits of said business shall be applied toward the liquidation of the account of W. R. Young, and that when so determined by said first party, said profits shall be so applied.

"It is further understood and agreed that first party shall have the right to finance such part of the business of second party as reflected in the enterprises hereinbefore set forth as it may deem proper and on such terms as may be mutually agreed upon. Said financing shall consist of the purchase of customers' notes and mortgages as hereinafter set forth. Said first party may, for the liquidation of second party's account, reserve in the form of deferred credits from all sums payable to R. C. Scott for customers' notes and mortgages as herein set forth and apply as earned from time to time toward a reduction of second party's indebtedness, all profits accruing on such transactions, the same being the difference between the face value of the notes purchased and the amounts paid therefor.

"It is further understood and agreed that first party shall purchase on terms mutually satisfactory, customers' notes and mortgages from F. W. Young, Inc., concerning small loans, so-called, and large loan notes and mortgages, so-called, from R. C. Scott, all such notes to bear the personal indorsement of W. R. Young. In consideration of the foregoing, said first party shall receive 35 per cent. of all interest charges collected on customers' accounts of F. W. Young, Inc., until paid in full, and a finance charge of eight

per cent. for 12 months, seven per cent. for 10 months, six per cent. for 8 months and five per cent. for 6 months, on all sums paid to third party on customers' notes purchased by first party from R. C. Scott.

"It is understood and agreed that all profits arising from charges accruing other than interest charges, to-wit, finance profits, should be retained by first party in the form of deferred credits, as aforesaid, and shall be applied as earned toward a reduction of second party's indebtedness to first party.

"When the entire indebtedness of second party to first party shall be paid by application of earned deferred credits and profits to the reduction thereof, first party shall reassign all stock to second party, and shall pay to said second party a sum equal to the amount of earned deferred credits then outstanding on its books in favor of second party, and transfer back to second party, by quitclaim deed, the 40 acres in Oakland county now held by it as security."

Plaintiffs contend that William R. Young, operating under the direction and control of the Federal and General Discount Corporations in the small and large loan business as F. W. Young, Inc., and R. C. Scott must be regarded as one and the same entity. It is urged by defendants that the above agreement was entered into in good faith for the mutual benefit of the parties thereto and to safeguard the interest of the Federal Discount Corporation in advancing the money from time to time to F. W. Young, Inc., and William R. Young, individually, doing business as R. C. Scott and to enable William R. Young to discharge his indebtedness.

We have examined the agreement of November 20, 1931, and find that it has for its purpose the safeguarding of the interests of the Federal Discount Corporation in advancing money from time to time to F. W. Young, Inc., W. R. Young, individually, doing business as R. C. Scott, and to enable W. R.

Young to discharge his indebtedness. We are unable to say that such an agreement was entered into in bad faith.

It appears that all of the commercial paper acquired by the F. W. Young, Inc., and the R. C. Scott business was assigned to the Federal Discount Corporation or General Discount Corporation and as the money was collected by the "large" and "small" loan companies, payments were remitted to the discount corporation except that a part of the interest earned was retained in accordance with the agreement of November 20, 1931. The above agreement provided that the Federal Discount Corporation shall have the "exclusive right" to determine what proportion of the profits of R. C. Scott shall be applied towards the liquidation of the account of W. R. Young. In our opinion the record would sustain a charge that there has been a preference of creditors, but a debtor has the right to give preference to a certain creditor to the exclusion of all others. See *In re United Fuel & Supply Co.*, 250 Mich. 325.

It is urged that the capital assets of the F. W. Young, Inc., constitutes a "trust fund" for the equal and ratable benefit of the corporate creditors.

In *Baker* v. *Hellner Realty Co.*, 265 Mich. 625, we said:

"It is settled in this State that a corporation may prefer its officers and directors, even though such preferences are given on the eve of insolvency and in payment of antecedent debts."

In *McKee* v. *City Garbage Co.*, 140 Mich. 497, this court held that the creditors of an insolvent corporation are not entitled to a *pro rata* share of its assets, and each creditor does not have an equitable lien upon such assets.

See, also, *Webster* v. *Ypsilanti Canning Co.*, 149 Mich. 489.

The supreme court of the United States in *Hollins* v. *Brierfield Coal & Iron Co.,* 150 U. S. 371, 383 (14 Sup. Ct. 127), said with respect to the "trust fund theory":

"Whatever of trust there is arises from the peculiar and diverse equitable rights of the stockholders as against the corporation in its property and their conditional liability to its creditors. It is rather a trust in the administration of the assets after possession by a court of equity than a trust attaching to the property, as such, for the direct benefit of either creditor or stockholder. * * *

"A party may deal with a corporation in respect to its property in the same manner as with an individual owner, and with no greater danger of being held to have received into his possession property burdened with a trust or lien. The officers of a corporation act in a fiduciary capacity in respect to its property in their hands, and may be called to an account for fraud or sometimes even mere mismanagement in respect thereto; but as between itself and its creditors the corporation is simply a debtor, and does not hold its property in trust, or subject to a lien in their favor, in any other sense than does an individual debtor."

If we assume that the Federal Discount Corporation was a parent corporation to the F. W. Young, Inc., it must be shown that the Young corporation was formed for the purpose of perpetrating a fraud in order that the parent corporation may be held liable for the acts of its subsidiary.

In *Finley* v. *Union Joint Stock Land Bank of Detroit,* 281 Mich. 214, the court said:

"In *North* v. *Higbee Co.* (syllabus), 131 Ohio St. 507 (3 N. E. [2d] 391), the court held:

" 'The separate corporate entities of a parent and subsidiary corporation will not be disregarded and the parent corporation will not be held liable for the

acts- and obligations of its subsidiary corporation, notwithstanding the facts that the latter was controlled by the parent through its stock ownership, and that the officers and directors of the parent corporation were likewise officers and directors of the subsidiary, in the absence of proof that the subsidiary was formed for the purpose of perpetrating a fraud and that domination by the parent corporation over its subsidiary was exercised in such manner as to defraud complainant.' "

We have examined the record carefully and fail to find substantial proof that the Federal Discount Corporation was a parent corporation of the F. W. Young, Inc., and concur in the finding of the trial court that neither of the defendants have any assets of the F. W. Young, Inc., in their possession, custody or control, nor are they responsible for the debts of F. W. Young, Inc.

The decree of the trial court is affirmed, with costs to defendants.

BUSHNELL, C. J., and CHANDLER, NORTH, McALLISTER, WIEST, and BUTZEL, JJ., concurred. The late Justice POTTER took no part in this decision.