THE COLUMBIAN NATIONAL LIFE INSURANCE COMPANY, a Corporation, Plaintiff-Appellant, v. JACK DUBINSKY, ETHEL DUBINSKY, HYMAN COHEN and RAY COHEN, Defendants-Respondents.—160 S. W. (2d) 727.

Division One, February 26, 1942.

Rehearing Denied, April 16, 1942.

*D. Calhoun Jones* and *Philip S. Alexander* for appellant.

302

*Dubinsky & Duggan* for respondents Dubinsky.

*Julius H. Drucker* for respondents Cohen.

306

■■■■

■ HYDE, C.—This action was commenced as a suit on a note (of $36,000) for a balance due of $15,298.81. Defendants Dubinskys' answer sought affirmative equitable relief. (Cancellation and injunction.) Plaintiff's reply set up the Statute of Frauds in addition to making a general denial. Defendants Cohens' answer was a general denial, but they actually admitted liability for some amount. The court entered a decree giving the Dubinskys all the relief sought and finding a balance due of $6000 against the Cohens only. Plaintiff has appealed and contends that all defendants are liable for the full amount sued for and interest.

■ Defendants have filed a motion to strike certain exhibits (being all the written documents offered in evidence by any of the parties) on the ground that they were not included in the bill of exceptions allowed and filed in the trial court and that the bill contained no "direction to the clerk to copy the same." Defendants have filed a counter abstract showing these facts and plaintiff admits that this is true in his suggestions in opposition to the motion. These documents therefore cannot be considered because they were not in the bill when allowed and there was no compliance with the provisions of Section 1229, R. S. 1939 (sec. 1063, Mo. Stat. Ann. 1361) so as to make it possible to put them in later. [See State ex rel. McSweeney v. Cox, 315 Mo. 1332, 289 S. W. 869; O'Malley v. Continental Life Ins. Co., 343 Mo. 382, 121 S. W. (2d) 834.] The motion to strike is sustained.

Defendants have also filed a motion to affirm or dismiss for failure to preserve all the evidence (meaning the written documents stricken) and for other matters going to the merits. Defendants cite our Rule 13. However, it only requires setting out the substance of documentary

evidence concerning which there is no controversy. Since there is enough in the record to show at least some of the material substance of these admittedly executed documents and since the whole record (even without them) so plainly discloses that the result reached by the trial court was wrong, as to all defendants, this motion will be overruled.

The existence and execution of the note sued on was admitted by the Dubinskys' answer. It was also stated herein that this note was "secured by a parcel of property known and numbered 3309-21 Washington Boulevard, in the City of St. Louis." It was admitted at the beginning of the trial that this note (dated June 1, 1932) was in renewal of the original deed of trust on this property, and the notes secured thereby, made May 31, 1929, given to secure payment of a total debt of $45,000; and that the property was conveyed by the Dubinskys to the Cohens by a deed dated June 17, 1929, subject to this first deed of trust, securing the sum of $45,000, which the Cohens assumed and agreed to pay. The renewal agreement was executed July 7, 1932, (renewal notes were dated back) and renewed $40,000 unpaid balance of the debt secured by the deed of trust, which provided for annual principal payments of $2500. The Cohens paid the $2500 principal note due May 31, 1930, and also the $2500 principal note due May 31, 1931, leaving the debt of $40,000 at the time of the 1932 renewal. The deed of trust was ▮▮▮ foreclosed on January 13, 1939, and plaintiff bid in the property for $30,000. The parties had conflicting evidence as to the value of the property at different times. Mr. Dubinsky was in the real estate business and had been for many years.

Plaintiff's evidence did show that the renewal agreement recited: "The said parties for themselves and for their respective heirs, administrators, executors, successors or assigns, hereby mutually agree that the time for the payment of the said principal sum still remaining unpaid, to-wit, forty thousand dollars, shall be paid in the amount and at the times as follows, to-wit:" and that the agreement then described "four one thousand dollar notes, each payable annually after June 1, 1932, and the fifth note for thirty-six thousand dollars, due June 31, 1937." It was further shown that plaintiff continued to hold all of the original notes secured by the deed of trust, and that each of them had an endorsement made on the back referring to the terms of this extension agreement, dated July 7, 1932.

It was also shown that the renewal agreement contained the following further provisions:

"And first and second parties hereby covenant that they will pay the said notes, both principal and interest, in the amount and at the times hereinbefore specified, and that they will perform and preserve all of the covenants, agreements, stipulations and conditions on the part of the maker of said deed of trust, in all respects as if the said

notes in the amount and due at the time aforesaid, had been inserted in said deed of trust. It is expressly understood and agreed that simultaneously with the execution and delivery of the principal and interest notes called for under the terms of this agreement, there shall be endorsed on the notes now held by Third party a notation to the effect that same are held subject to all the terms and conditions of this agreement, and that *upon the payment of the notes called for in this agreement, both principal and interest, the notes now held by the Third party,* together with the deed of trust, *are to be surrendered* to First and Second parties.'' (Our italics.)

Defendants' answer alleged that ''these defendants were not the owners of said real estate on June 1, 1932, and had not been the owners of said real estate (securing the note) for several years prior thereto;'' that it ''was executed as an accommodation for the benefit of the plaintiff herein and was so executed at the suggestion of said plaintiff for its accommodation;'' and that ''at the time of the execution of said note the said plaintiff agreed that at the maturity of said note that if the said note was not paid by the owners of the real estate aforementioned, that the said plaintiff could cancel said note in so far as it affected these defendants, and that the plaintiff would not at any time attempt to collect from, or hold these defendants liable on said note.'' The conceded facts show that the renewal note sued on was given for the Dubinskys' own debt for money loaned to them by plaintiff before they sold and conveyed the property to the Cohens. The only evidence of such a promise, as alleged in this answer, was Mr. Dubinsky's testimony (corroborated by his clerk) concerning a conversation with plaintiff's loan correspondent Mr. Farish. He had been negotiating with Mr. Farish to get a renewal with only the Cohens signing the extention agreement and notes. (He said he offered to release the Cohens from a $5150 second mortgage if that could be done, but there is no reference to this in his answer.) He said that on July 7, 1932, he first refused to sign the renewal papers, but that Mr. Farish ''had a letter that he held in his hand and in it it said that the company, he said, had agreed to renew the loan;'' that he said ''the company wouldn't hold me liable or responsible at any time in the future in any way if I would give up this second deed of trust, and thereby relieve Mr. Cohen of the liability of $5,150, and that company so has informed him, and that for this matter of the surrendering of the note and not having to go out and appraise and redescribe this loan to the Insurance Department, that they would;'' and that ''I finally agreed to become an accommodation maker.''

Mr. Dubinsky took the renewal agreement and notes home and had his wife sign them and brought them back the next day. Mr. Dubinsky also admitted that he signed another renewal agreement for extension of this same debt in 1937. However, when plaintiff's

attorney attempted to examine him further about this 1937 renewal and the circumstances under which it was given, the court, upon objection by his counsel, refused to permit it. The court also refused to permit testimony by Mr. Farish concerning the 1937 renewal.

Plaintiff had evidence of its officer (Mr. Mullen) in charge of mortgage loans, that no letter was ever written containing any statement such as Mr. Dubinsky said Mr. Farish told him was contained in a letter from the company at the time he signed the renewal agreement. Plaintiff offered in evidence its entire file of correspondence between it and Mr. Farish concerning the 1932 renewal, but this was excluded upon objection that they were self serving. (Certainly they must not have shown anything favorable to the Dubinskys' theory.) Plaintiff was not even permitted to show the amount due upon the original mortgage debt. Testimony concerning the original notes was excluded on the objection that only the $36,000 (1932) note was sued on and that nothing else was involved. Plaintiff did have testimony that $9,298.83 of the foreclosure bid was credited upon other obligations of the makers of the notes but did not show what these were.

The court's decree made findings of ownership of the mortgaged property by the Cohens and of the execution of the $36,000 note sued on by them and the Dubinskys. The court made further findings therein, as follows:

"The Court doth further find that at the time of the execution of the said note in the sum of $36,000.00, that the defendants, Jack Dubinsky and Ethel Dubinsky, executed said note without any consideration passing to either of them or both, and was executed by them as an accommodation for the benefit of the plaintiff herein, and was so executed at the suggestion of said plaintiff for its accommodation;

"The Court doth further find that at the time of the execution of said note, that the plaintiff agreed that at the maturity of said note, that if said note was not paid by the defendants, Ray Cohen and Hyman Cohen, as the owners of said real estate aforedescribed, that the plaintiff would cancel said note in so far as it affected the defendants, Jack Dubinsky and Ethel Dubinsky, and that the plaintiff would not attempt to collect from or hold these defendants, Jack Dubinsky and Ethel Dubinsky liable on said note."

The decree also found that the Cohens were entitled to credit for the full amount of the foreclosure bid. The order of the decree was that the note sued on be cancelled and that plaintiff be permanently enjoined from transferring it and that the Dubinskys be discharged. It also entered judgment against the Cohens for only $6000.

The quoted findings are without any support in the evidence. The decree is clearly wrong: In the first place, there was no evidence

to show that Mr. Farish had any authority to make an agreement to release the maker of a note owned by plaintiff. He was not shown to be an officer or even an employee of plaintiff, but was a loan correspondent who received compensation for loans by commissions apparently paid to him only by the borrower. It does not appear what was actually stated in any letter from plaintiff which Mr. Farish had on July 7, 1932, but only what it is claimed that Mr. Farish said about it. No one claimed to know who wrote or signed any such letter. Since no authority to make such an agreement for plaintiff was shown, the applicability of the Statute of Frauds is not presented for decision. However, see Wendover v. Baker, 121 Mo. 273, 25 S. W. 918; Davis v. Holloway, 317 Mo. 246, 295 S. W. 105; Gates Hotel Co. v. C. R. H. Davis Real Estate Co., 331 Mo. 94, 52 S. W. (2d) 1011. Likewise, the testimony about the second mortgage is immaterial in the absence of any showing of authority of Mr. Farish to make such an agreement.

■ The second reason why the decree is clearly wrong is that no one can be an accommodation maker of a note given for his own debt. The Negotiable Instruments Law (sec. 3045, R. S. 1939; sec. 2658, Mo. Stat. Ann. 661) provides that "an accommodation party is one who signed the instrument .. . . without receiving value therefor, and for the purpose of lending his name to some other person." Here the original debt was the Dubinskys' own debt and they were already liable for its payment without signing the renewal note sued on, given to extend the time of payment. It is true that an accommodated party cannot recover from the accommodation party, but "the accommodated party, in a legal sense, is the person to whom the credit of the accommodating party is loaned." [Farm & Home Savings & Loan Assn. v. Theiss, 342 Mo. 40, 111 S. W. (2d) 189; Overland Auto Co. v. Winters, 277 Mo. 425, 210 S. W. 1.] The Dubinskys loaned no credit to plaintiff. The loan was entirely the other way; Dubinskys got plaintiff's money and never paid it back. [See 8 Am. Jur. 207, sec. ■ 454 et seq. and cases cited; 11 C. J. S. 293, secs. 741-42, and cases cited; see also Greenwade v. First National Bank (Ky.), 41 S. W. (2d) 369, holding extension of time only to be sufficient consideration to take endorsers (already liable) out of the category of accommodation endorsers; also see Chaonia State Bank v. Sollars, 190 Mo. App. 284, 176 S. W. 263.] We hold that the conceded facts of this transaction show that plaintiff could not be the accommodated party under the Negotiable Instruments Law, and that the Dubinskys were not and could not be accommodation parties as to it.

■ It is also true, as contended by the Dubinskys, that when the Cohens purchased the mortgaged property and assumed and agreed to pay the mortgage, then the Cohens became the principal debtors and the Dubinskys' relation changed to that of sureties, so that plaintiff after knowing of such relation, would release the Dubinskys if it ex-

tended the time of payment without their consent. [Pratt v. Conway, 148 Mo. 291, 49 S. W. 1028; Regan v. Williams, 185 Mo. 620, 84 S. W. 959; Bloss v. Gray, 225 Mo. App. 419, 37 S. W. (2d) 975; Ruskamp v. Fetchling (Mo. App.), 101 S. W. (2d) 524; 37 Am. Jur. 357, sec. 1057; 41 A. L. R. 277 note; 41 C. J. 735, sec. 786.] However, their consent to an extension was not necessary to make the Dubinskys liable (because they were then already liable to plaintiff for the debt) but such consent was only necessary to prevent their release. Then when they did consent by signing extension notes and the extension agreement, their existing liability for the debt merely continued as it already was, unreleased.

██ Furthermore, it appears from the recitals of the extension agreement read in evidence that the extension notes were to be in effect collateral security for the original notes, secured by the trust deed which was not released, and that these were not to be surrendered until the extension notes were paid. A notation was put on these original notes that they were held subject to the terms of the extension agreement. Thus it is clear that the extension notes were not in payment of the original notes but that payments on them were only to be credited on the original notes when made. [See 10 C. J. S. 770, sec. 279; 8 Am. Jur. 446, sec. 792; 52 A. L. R. 1417, annotation, in which many Missouri cases are cited.] Thus the action of the trial court in refusing to receive evidence as to the amount due on the original notes was clearly wrong, and made it impossible for plaintiff to prove the amount for which suit was brought. When the Dubinskys filed an answer containing an equitable cross claim seeking affirmative equitable relief, it converted the action to one in equity. [Wendover v. Baker, supra.] This answer alleged that there was no consideration for the extension note upon which suit was brought. This opened up the whole matter and made evidence admissible as to the entire transaction. Although plaintiff did not properly include all offered documents in the bill of exceptions, enough appears to show the facts essential to decide the issue of liability. Since this case is in equity, we may consider all evidence properly preserved in the record, regardless of the trial court's rulings, determine what judgment should be rendered and direct the trial court to enter it. [Rice v. Shipley, 159 Mo. 399, 60 S. W. 740; Graham v. Karr, 331 Mo. 1157, 55 S. W. (2d) 995; Aden v. Dalton, 341 Mo. 454, 107 S. W. (2d) 1070.] If all essential documents had been properly preserved, it might have been possible to determine even the amount due. [Central States Life Ins. Co. v. Bloom, 345 Mo. 982, 137 S. W. (2d) 517.] However, since the Dubinskys' evidence failed to show any ground upon which they could have been released from their original debt or escape liability therefor, we hold that they are liable. (The Cohens admit liability.) Therefore, the only issue for determination is the amount due.

The decree is reversed and the cause remanded for further proceedings not inconsistent with the rulings herein made. *Bradley* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as as the opinion of the court. All the judges concur.