Mrs. Thelma Akana **HARRISON**,
Appellant,

v.

**M.R.A., LTD., d/b/a Territorial Collectors,**
Appellee.

No. 16497.

United States Court of Appeals
Ninth Circuit.

April 13, 1960.

Rehearing Denied May 12, 1960.

R. G. Dodge, Heen, Kai & Dodge, Honolulu, Hawaii, for appellant.

Robert M. Rothwell, Honolulu, Hawaii, for appellee.

Before CHAMBERS, JERTBERG and KOELSCH, Circuit Judges.

JERTBERG, Circuit Judge.

The appellee, an assignee for collection, brought this action against the corporate maker of a promissory note and against appellant as accommodation co-maker of said note. The corporation failed to answer, and a default judgment was entered against it. The appellant answered with a general denial, and also pleaded an affirmative defense of lack of consideration for her promise. The case was tried without a jury, and judgment was entered for appellee for the principal sum of the note, interest, attorney's fees and costs. From the affirmance of this judgment by the Supreme Court of Hawaii this appeal is prosecuted. The opinion of the Supreme Court of Hawaii is reported in Volume 43 Hawaii Reports, pages 98 and 209.

The Supreme Court of Hawaii had jurisdiction of this case under Hawaii Rev. Laws § 214–4 (1955), and the trial court had jurisdiction under Hawaii Rev.Laws § 215–17(e) (1955). The jurisdiction of this Court is founded on 28 U.S.C. §§ 1293 and 1294, and upon the Hawaiian Admission Act § 13, 73 Stat. 4 (1959), 48 U.S.C.A. preceding section 491.[1]

From October 17, 1950 to June 1, 1951, one Benjamin Fukunaga was the owner of all the capital stock of Hawaiian Amalga-Pave, Limited, an Hawaiian corporation. The corporation had the exclusive license in the Territory of Hawaii to use a new form of asphalt paving mix (amalga-pave) which had just been invented and patented. In order to promote the enterprise, Fukunaga advanced considerably in excess of $10,000 to and for the benefit of the corporation. In the spring of 1951, however, Fukunaga decided for reasons variously advanced at the trial,[2] that the best thing for him to do was to get out of the corporation and recoup as much of his losses as possible.

To this end, Fukunaga began negotiations with appellant, who had founded the corporation and who had sold him the stock which he acquired in the fall of 1950. These negotiations concluded in a contract and a promissory note, both executed contemporaneously on June 1, 1951.[3] There was considerable dispute between the parties at the trial as to whether the tenor of the agreement was that appellant would buy outright Fukunaga's complete ownership of the corporation, or whether the shares were merely to be assigned to appellant as agent to sell them for Fukunaga's benefit. Such resolution appears to us to be immaterial to the issues of the case, and we will henceforth assume, in accordance with appellant's position, that the transfer agreed to contemplated only an agency relationship. This was the view followed by the Supreme Court of

1. The decision of the Supreme Court of Hawaii was entered on January 15, 1959, and its order denying appellant's petition for rehearing was entered April 6, 1959. The decree on appeal, and the notice of appeal, were both filed on May 5, 1959. Hawaii became a state by presidential proclamation on August 21, 1959.

2. Three reasons apparently stand out. First, Fukunaga found himself unable to raise the necessary capital to successfully promote the new process. Secondly, further investigation on his part indicated that the venture might not be as promising as originally expected. Finally, strong family pressure was put on him to abandon the business and devote full time to the family business.

3. "Except where the provisions of a contemporaneous instrument are repugnant to the note or bill and will destroy its effect, notes or bills and contemporaneous written agreements executed as part of the same transaction will be construed together as forming one contract." 10 C.J.S. Bills and Notes § 44b, p. 482.

Hawaii, although contrary to the express finding of the trial court.

For purposes of this appeal, there are two important provisions of the June 1, 1951 contract. First, Fukunaga expressly agreed that he would compromise his then due and owing claims against the corporation for the liquidated sum of $10,000. He also agreed that he would give the corporation fifteen months to pay said sum. In return for this and other promises in the contract, appellant expressly agreed that she would cause Hawaiian Amalga-Pave, Limited to: "Execute and deliver to Fukunaga a promissory note for $10,000 and Harrison will join in the execution of said promissory note as accommodation maker." On that same date the note for $10,000 sued upon was executed by the corporation as principal maker and appellant as co-maker. The note was not paid at maturity, and after demand for payment was refused, it was assigned by Fukunaga to appellee for collection purposes and the lawsuit followed.

As we view this appeal, two questions are raised, the first minor and the second major. First, in the tripartite situation of Fukunaga, the corporation and the appellant, was the corporation the presumed accommodated party? And secondly, if the corporation was the presumed accommodated party, was the actual "accommodation" legally effective so as to affix primary liability on the appellant? Appellee concedes that if either of these propositions is answered in the negative, then the appellant must prevail on this appeal.

Turning to the first question, the problem is to determine the status of the three parties to the note. It is unques- tioned that, according to agreement, appellant was the accommodation party, but the problem arises as to whether the payee Fukunaga or the corporate principal maker was the accommodated party. Section 29 of the Uniform Negotiable Instruments Law, applicable in Hawaii by Hawaii Rev.Laws § 197–29 (1955), defines an accommodation party to a negotiable instrument as follows: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and *for the purpose of lending his name to some other person.*" (Emphasis supplied.) Since it is not disputed that appellant was an accommodation maker, the question presented is simply that of whom did she accommodate?

The essential feature of an accommodation party to a negotiable instrument is a loan of credit or financial standing to an accommodated principal party.[4] Gardiner v. Holcomb, 1927, 82 Cal.App. 342, 255 P. 523; Hirtz v. Koppes, 1931, 212 Iowa 536, 234 N.W. 854; Columbian Nat. Life Ins. Co. v. Dubinsky, 1942, 349 Mo. 299, 160 S.W.2d 727. In this case the principal maker was the corporation. The general presumption would be that the accommodation maker was lending his credit to the principal maker, or else, indeed, why would the creditor have required the accommodation signature. It is clear from the contract that the only way that Fukunaga was willing to rely on the corporate promise to pay in futuro was if the appellant would lend her credit to the corporation. It is clear that under no other terms was Fukunaga willing to abandon what for him had become a sinking ship.[5]

4. For a good definition of an accommodation party, see 11 C.J.S. Bills and Notes § 737: "Accommodation paper is a bill or note to which the * * * maker * * * has put his name without consideration, for the purpose of accomodating by a loan of his credit some other person *who is to provide for the bill or note when it falls due.*" (Emphasis supplied.) For an excellent introduction to the problem, see Morris, Accommodation Parties to Negotiable Instruments, 61 W.Va.Law Rev. 83 (1959).

5. Consider this testimony of Fukunaga: "Q. Was this promissory note, which is the subject matter of this litigation, given and executed pursuant to the terms of this agreement [the June 1, 1951 contract] to which we last referred? A. Yes." [Reporter's Transcript, p. 5.]

Of course, it is not invariably true that the maker is the accommodated party, and there are cases where the payee is the accommodated party. Such a one is Carr v. Wainwright, 3 Cir., 1930, 43 F.2d 507. In that case, a corporation gave two notes to the vendor of land being purchased by the corporation. The payee subsequently asked the president of the corporation to endorse the notes so that he, the payee, could negotiate them on the strength of the president's personal endorsement. Being unable so to do, the payee then sued the president for collection. The president prevailed on the ground that his endorsement was for the accommodation of the payee and not the corporation. No such parallel exists to the case at bar, for no evidence was offered which would tend to show that the reason Fukunaga obtained the signature of appellant was his desire to negotiate the note on the strength of her credit.

■ We think the conclusion inescapable that, when the note was executed on June 1, 1951, the corporation was the party accommodated by a loan of appellant's credit to it to insure that its liability would be paid when due. To hold that Fukunaga was the party purportedly accommodated (i. e. the party to whom appellant's credit was lent) simply would not make sense out of the June 1, 1951 transactions. All testimony tended to show that the accommodation was sought and given to guard against exactly what happened, and we would be closing our eyes to the realities of the situation to hold otherwise. It is interesting to note that this point was not raised before the Supreme Court of Hawaii. We hold that it was the corporation whose interests were accommodated by appellant's signature as co-maker.

Turning to the next problem, the question is whether the accommodation by appellant was a legally valid accommodation so as to hold her liable in this case. Appellant challenges her liability as an accommodation maker on two grounds.

First she urges that there was no consideration for her promise on the note, and secondly she urges that there was no reliance on her name in the execution of the note.

■ We consider first the question of consideration for her promise. It is well-settled that consideration given for the promise of one joint maker of a note is sufficient to bind the other joint maker. Yost v. Morrow, 9 Cir., 1959, 262 F.2d 826; First National Bank of Scribner v. Golder, 1911, 89 Neb. 377, 131 N.W. 600; Penn Mutual Life Ins. Co. v. Orr, 1934, 217 Iowa 1022, 252 N.W. 745.[6] Hence the question is whether the corporation as principal maker received consideration from Fukunaga for its principal liability on the note.

■ Section 25 of the Uniform Negotiable Instruments Act, Hawaii Rev. Laws § 197–25 (1955), defines the consideration necessary to support principal liability of a negotiable instrument as follows: "Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time." In this case Fukunaga made two concessions to the corporation, in return for its note as principal debtor. First, he agreed to settle and compromise all his claims for the liquidated sum of $10,000, and secondly, he agreed to give the corporation fifteen months to pay said amount. It is clear to us that the compromise and extension of the past indebtedness is sufficient consideration to bind the corporation as principal on the note, and that this consideration passing to the principal maker is sufficient in law to bind the appellant as accommodation co-maker. It is interesting to note that the Supreme Court of Hawaii, in passing, said: "However, it has been admitted on behalf of Thelma Akana Harrison that there was consideration given by Benjamin Fukunaga to the other co-maker of the note, Hawaiian Amalga-Pave, Limited."

6. Additional cases are collected in 95 A.L.R. 964, 972 (1935).

Hence, the fact that there was no consideration directly passing to appellant for her promise is not only immaterial to the resolution of this case, but indeed, had there been consideration for her promise she would not be an accommodation maker but would be a principal maker!

■ Finally, we turn to the issue of reliance, which in our view is the major one pressed on this appeal. Appellant argues that even if Fukunaga did give consideration to the corporation, such consideration or value was not given in reliance upon her name or credit. Hence, did Fukunaga, in effecting his compromise and extension with the corporation, rely on appellant's name?

It is of course true that the original sums advanced to the corporation were lent long before appellant assumed the liability for their repayment, but this alone is not conclusive of the case. We are not concerned with the lack of reliance in the disbursement by Fukunaga of the original promotional expenses. Rather, the question is whether there was any reliance at the time that "value" (i. e., the compromise and extension) was given by Fukunaga for the note. As we have indicated, Fukunaga gave such value on June 1, 1951 only on the basis that appellant would assume the obligation as accommodation co-maker, and this to us establishes the requisite reliance element.

This is a very different situation from the case of London & Lancashire Indemnity Co. v. Allen, 1956, 272 Wis. 75, 74 N.W.2d 793. In that case, in order to protect themselves after discovery of an embezzlement, the bank informed the embezzler that he must cover the shortage with a promissory note signed by him and by reputable and solvent citizens. A note acceptable to the bank was given by the embezzler, and *thereafter* one Dr. Stitgen signed as an accommodation co-maker. When sued upon the note by the

bank's assignee, the court held that the note was unenforceable as against him. The court made it clear that the bank had given value to the embezzler, and hence his obligation was enforceable; but the important thing was that this value was *not* given on the strength of Dr. Stitgen's signature because that signature came after the bank had given said value to the primary maker, the embezzler Allen.[7] In the case at bar, the contract of June 1, 1951 clearly shows that the value Fukunaga gave was only given in reliance upon appellant's signature.

Affirmed.

---

7. But see Britton on Bills and Notes at p. 384, where the author is highly critical of this type of result, and argues that the accommodation party should be bound even when he signs the debtor's note subsequent to its issuance to the creditor.