MARGARET STREICHER WINKEL, Plaintiff-Appellant, v. LEO STREICHER et al., Defendant-Respondents, No. 45566—295 S. W. (2d) 56.

Court en Banc, November 12, 1956.

*Everett Paul Griffin* and *M. E. Clinton* for appellant.

*Earl G. Smith* and *Earl Q. Smith* for respondents.

[57] HYDE, J.—Action to construe the trust provisions of a will and for a decree requiring the trustee to make payments plaintiff contended were required by the will. The Court construed the will contrary to plaintiff's contentions and plaintiff appealed to the St. Louis Court of Appeals, which affirmed the decree. (Winkel v. Streicher, 287 S. W. 2d 389.) We transferred the case here on application of plaintiff.

The will to be construed is the will of Elizabeth Streicher, who was a sister of the father of plaintiff and her sister Lillie Streicher (the beneficiary of the trust involved), and was executed August 9, 1950. Elizabeth Streicher died August 30, 1950. The trust was created by Article Fourth of her will, the material part being as follows:

"I give, devise and bequeath my real estate located at 1514 Ferguson Avenue, St. Louis County, Missouri, to Fred A. Rottman, in trust nevertheless for the following uses and purposes to-wit:

" (1) The trustee shall have the power to buy, sell, rent, lease, mortgage, invest and reinvest the trust estate.

" (2) The trustee shall pay the net income and any part of the corpus of the estate, as he in his sole discretion deems necessary, to my niece, Lillie Streicher or her guardian or to any person or corporation caring for her, for the support and maintenance of my said niece.

" (3) The trust shall terminate upon the death of my niece, Lillie Streicher, and at that time the corpus of the trust estate, including any accumulated income, shall be transferred, paid and delivered as hereinafter provided in Article Fifth of this will."

Article Fifth disposed of the remainder of her estate, dividing it into two equal parts, and giving one part as follows:

"One-half thereof to my nephews and nieces by blood related to me, who are surviving at the time of my death, in equal shares, share and share alike, provided the share of my niece, Lillie Streicher, if she be living shall be paid to the trustee hereinbefore named in Article Fourth of this will, subject to the terms of said trust."

More than a year after the death of Elizabeth Streicher, Isabelle Streicher, the mother of plaintiff and Lillie, made her will on November 14, 1951 and she died February 4, 1953. Her will gave one dollar [58] each to plaintiff and Lillie and gave all of her property to her husband if he survived her. However, since he did not survive her, all of her property went to plaintiff by the Seventh Article of her will; but the next article provided: "Eighth: In consideration of this bequest to my daughter Margaret Streicher Winkel, it is understood that she will pay for the support and maintenance of my daughter, Lillie Streicher, as long as she may live."

Lillie was kept in the Emmaus Home at Marthasville, Missouri, at the time her aunt's will was made in 1950 and has been there ever since. The amount of her share under residuary Article Fifth of her aunt's will was about $1500.00, after deducting the State inheritance tax; and this fund was first used for her support by the trustee. After this money had all been used, payments for her support were made from the trust fund income. The amount paid to the Home by the trustee was $60.00 per month, which he paid until after final settlement of her mother's estate in June 1954. The trust fund was $8000.00 principal (apparently the real estate had been sold) "and approximately $500.00 income" (unused by the time of the trial) so there had been no encroachment on the corpus, except the part thereof that came from the residuary estate. It was alleged that plaintiff's mother's estate was approximately $28,000.00, but it was not definitely shown what amount, if any, was received by plaintiff, although her attorney thought she might have received $18,000.00. It was agreed by stipulation prior to the trial that the trustee would continue to pay $60.00 per month to the Home until the court rendered a decree.

The will of Elizabeth Streicher was prepared in the office of the trustee (her nephew, who took care of her business and investments) by an attorney called by him. Over the objection of plaintiff, the Court admitted testimony of the trustee concerning her statements made prior to the preparation of the will expressing concern that there would not be sufficient funds left by William and Isabelle Streicher (parents of Lillie Streicher) to properly provide for Lillie; that "she further stated that in the event there was not she would like to take care of Lillie Streicher"; and that "again she reminded me that in the event there were no funds for Lillie's provision, that I should use any or all the income and even the corpus of the estate

to pay for her keep whether it be at Emmaus, and at that time she was at Emmaus, or at any other place.'' Reference is made to the opinion of the Court of Appeals for other facts.

We agree with defendants' contentions that sole discretion vested in a trustee by a will is a matter of his own personal judgment which a court cannot control and exercise for him but may only prevent abuse of discretion, arbitrary or fraudulent action; that in construing a will the Court must determine the intent of the testator from the whole will; and that, in case of doubt as to the construction of a will, evidence of surrounding circumstances, subject matter and persons to be benefited may be considered. The authorities cited in the opinion of the Court of Appeals fully support these propositions. However, we do not agree that as a part of the surrounding circumstances it is proper to admit the statements of the testatrix concerning the intent and meaning of the language used in the will, because in effect this would be adding to a will a provision that is not there. The parol evidence rule does not permit this even to vary a contract between persons who are living and present at the trial. (Bank of Mountain View v. Winebrenner, 355 Mo. 79, 195 S. W. 2d 486 and authorities cited.) The oral direction of the testatrix sought to be added to the will would provide a limitation, not stated therein, on the authority given to the trustee, namely the limitation that he should only use the income or corpus for Lillie's support in the event there were no funds for that purpose from any other source, when the will at least left this to the trustee's discretion. [59] In a recent case en Banc, Bernheimer v. First National Bank of Kansas City, 359 Mo. 1119, 225 S. W. 2d 745, we said: ''The written will cannot be impeached by proof of what the testatrix said her objectives were'', citing annotations 94 A.L.R. 31, 34, 112, 114, 116, 119; Wooley v. Hays, 285 Mo. 566, 576-577 (2, 3), 226 S. W. 842, 844 (2, 3), 16 A.L.R. 1; Neibling v. Orphans Home, 315 Mo. 578, 596 (7), 286 S. W. 58, 65 (12), 51 A.L.R. 639; First Trust Co. v. Myers, 351 Mo. 899, 907 (2), 914 (5), 174 S. W. 2d 378, 380 (4), 385. In Wooley v. Hays, supra, it is said that to admit parol testimony of what the testator said as to his intention ''would be to permit wills to be made by parol and would, in effect, repeal the statute requiring them to be in writing.''

This rule has been recently restated in Evans v. Volunteers of America, Mo. Sup., 280 S. W. 2d 1, 5, as follows: '' 'The general rule is that parol evidence as to the testator's declarations concerning his intention, whether made before, at the time of, or subsequent to, the execution of his will, are incompetent upon the question of the construction to be given the language employed in the instrument. This for the reason that the testator's intention is to be ascertained from the will itself, considered in the light of relevant, extrinsic circumstances where the language used is ambiguous; and were parol evidence of the

testator's verbal declarations to be admitted, not only would the result be to subject the question of his intention to evidence of declarations which he, being dead, could not dispute, but it would also, in effect, be violative of the statute which requires all wills to be made in writing.'" (See also Marr v. Marr, 342 Mo. 656, 117 S. W. 2d 230, 234; Epstein v. Kuvin, N. J., 95 Atl. 2d 753, 36 A.L.R. 2d 1320.) However, in the Evans case (280 S. W. 2d l.c. 5) we pointed out that such declarations were admissible where necessary to resolve a latent ambiguity as to the identity of a beneficiary; and such declarations are also held to be admissible to determine the identity of property, ambiguously described, or "to rebut a resultant trust or some other equity or presumption." (57 Am. Jur. 711, Sec. 1111; See also annotation 94 A.L.R. 292; 69 C.J. 149, Sec. 1179.) Our conclusion from all the authorities must be that this evidence was inadmissible and it will not be considered by us in our review of this case.

Considering now the meaning of paragraph (2) of Article Fourth of Elizabeth Streicher's will as written ("The trustee shall pay the net income and any part of the corpus of the estate, as he in his sole discretion deems necessary, to my niece, Lillie Streicher or her guardian or to any person or corporation caring for her, for the support and maintenance of my said niece.") defendants say if there had been a "comma" between the words "income" and "and", to separate the clause concerning the corpus from the reference to net income, "then said language could be clearly interpreted to mean the trustee must pay all of the net income and may pay any part of the corpus to said niece." We do not think it is reasonable to decide the meaning of this provision solely on the basis of punctuation or lack of it. It is said in 57 Am. Jur. 753, Sec. 1155: "Although the testator's punctuation and capitalization may be taken into consideration in construing his will, the natural sense in which words are used, as it appears from judicial inspection, prevails over both punctuation and capitals, and punctuation must give way whenever it interferes with the proper and reasonable construction of a will." (See also Smoot v. Harbur, 357 Mo. 511, 209 S. W. 2d 249.) More important, it seems to us is the fact that, to get the meaning for which defendants contend, it is necessary to transpose the words "any part of" so that the sentence would read: "The trustee shall pay *any part of* the net income and the corpus of the estate etc." (It is pertinent to note that these words are thus transposed in [60] the oral direction of the testator as stated by the trustee in his testimony, namely: "that in the event there were no other funds for Lillie's provision that I should use any or all of the income etc.") The sentence does not read that way but instead commences with a clear direction that "the trustee shall pay the net income and *any part of* the corpus, etc." Thus, as written, the words "any part of" apply to the corpus and not to the net income.

Furthermore, we think the reasonable construction of the will considered as a whole with the relevant surrounding circumstances in evidence, is that there was no discretion given to the trustee as to payment of the income. The trust was for Lillie's support and maintenance and terminated at her death. What remained was to go then to the persons designated in the residuary article of the will, who had already received as much of the residuary estate as she had. While "any accumulated income" is mentioned as going with the corpus, certainly the purpose of the trust was not to accumulate income but to support Lillie. Of course, there might be some accumulated income, at any time before it was spent for that purpose, and to provide that it went with the corpus would prevent any claim to it by the beneficiary's administrator. Moreover, the surrounding circumstances were that when this will was made, the will of Lillie's mother, Isabelle Streicher, had not been made and there is nothing to show that Elizabeth Streicher had any reason to know what if any provision she would or could make for Lillie; and Isabelle Streicher's will was not made until after Elizabeth Streicher died. It also appears that Lillie was in the Emmaus Home before this will was made and that testatrix knew where she was when she made this will. Undoubtedly she knew about her condition and something about the cost of her maintenance there. It further appears that the trustee did pay the cost of Lillie's maintenance at the Home for some time before her mother died, because he testified that he had done so for three or four years prior to June 1954, and Lillie's mother died February 4, 1953. (Three years would be before her mother made her will.) Therefore, he did not depend upon Lillie's mother to support her but instead construed the will as placing that obligation on him to be paid out of the trust estate even during her mother's lifetime. Our conclusion is that the reasonable construction of this will is that it leaves no discretion as to the payment of the income of the trust estate for Lillie's support and maintenance but instead positively directs that the income shall be used for that purpose.

As to use of the corpus, it is apparent that the trust income alone is insufficient for Lillie's support and it would be necessary for the trustee to use corpus for that purpose unless he may consider the other means of support provided for her in her mother's will in determining the question of necessity. There is conflicting authority on the question of whether a beneficiary is entitled to support out of the corpus of a trust fund when he has other resources. (See Annotation 2 A.L.R. 2d 1431; Annotation 101 A.L.R. 1465; Bogert on Trusts, Sec. 812, especially cases under note 52, cumulative Pocket Part.) The question is still an open one in this State. It is really a question of interpretation of the trust provisions to determine the intent of the testator or settlor. In Scott on Trusts, 2d Ed., Sec. 128.4, it is said: "Where the trustee is directed to pay to the beneficiary or to apply

for him so much as is necessary for his maintenance or support, the inference is that the settlor intended that he should receive his support from the trust estate, even though he might have other resources." (Restatement of Trusts, Sec. 128, comment e, likewise says: "The inference is that he is so entitled.") However, the author of the annotation in 2 A.L.R. 2d, 1431, 1432, says: "By the weight of authority, unless the language of the trust instrument affirmatively reveals an [61] intention to make a gift of the stated benefaction regardless of the beneficiary's other means, the trustee should consider such other means in exercising his discretion to disburse the principal for the purpose. An authority to invade the principal if necessary in his judgment for a stated purpose, or if required or needed for the purpose, is construed broadly as referring to the pecuniary circumstances of the beneficiary as well as to the amount otherwise required, not narrowly as referring to the cost of the purpose considered apart. On the other hand some courts, especially in the case of a provision for support and maintenance, reverse the inference and presume that where the word 'necessary' is used and not otherwise explained, the necessity referred to is a necessity to accomplish the purpose except as the income of the fund may be sufficient, the benefaction intended being complete in itself and so not conditional upon the beneficiary's financial circumstances otherwise." In the recent case of In re Ferrall's Estate, 258 Pac. 2d 1009, the Supreme Court of California divided on this question, the majority following the rule of considering the beneficiary's other means of support (her husband's income) stated to be the majority rule in the annotation 2 A.L.R. 2d 1432 (quoting it) while the minority relied on the Restatement rule (of the inference being that the beneficiary was entitled to receive support from the trust estate regardless of other means) quoting the statement from Scott on Trusts, supra.

The question to be determined has clearly been stated by the Supreme Court of Connecticut, in Hoops v. Stephan, 38 Atl. 2d 588, 591, as follows: " 'The primary question in this class of cases always is, Does the will constitute an absolute gift of support and maintenance which it makes a charge upon the income from the estate and upon principal? If so, then the private income of the beneficiary cannot be considered. If, however, the gift is of income coupled with a provision that the principal may be invaded in case of need, the private income of the beneficiary must be considered in determining whether such need exists.' " In that case, the Court held the gift of maintenance and support was an absolute gift, basing this conclusion upon the language of the will and the surrounding circumstances, which all the authorities agree properly may be considered. We think it is undoubtedly true, as stated by the author of the annotation 2 A.L.R. 2d 1431 that "owing to the many possible variations in language, cir-

cumstances, and properties, no general rule is available other than that the intention of the trustor must govern in each particular case.''

In this case the surrounding circumstances have not been very fully developed. We do not know how old Lillie was or what her condition was when her aunt's will was made. (We do know she was being kept at the Emmaus Home at that time.) Neither do we know what the condition and resources of her mother and father were at that time, or whether they had been paying for Lillie's maintenance at the Home or who had done so. However, we do know (as hereinabove stated) that the trustee did pay the full amount of Lillie's maintenance at the Home for a considerable period during her mother's lifetime and used the part of the corpus derived from the residuary estate for that purpose. Whatever estate her mother had, the trustee did not consider that it was to be used before he made these payments; and we do not think her testimentary disposition of her estate has any bearing whatever on the construction of this earlier will. (The provision made by her will could only be considered by the trustee if we construed the will herein involved as giving him discretion to consider other means provided for Lillie's support in determining the amount to be used from this trust fund corpus for that purpose.) We are inclined to regard the rule stated by Professor Scott and the Restatement as the better rule because we believe that [62] language directing a trustee to pay to a beneficiary so much as is necessary for his support would ordinarily be understood by a testator to mean that the beneficiary was to receive his full support from the trust estate. A testator usually knows the circumstances of the beneficiary he designates and if he desires any other resources or obligations for his support to be taken into consideration in determining the amounts to be paid to him he easily could so indicate. (See Lyter v. Vestal, 355 Mo. 457, 196 S. W. 2d 769, 2 A.L.R. 2d 1375 where the testator limited use of corpus to emergencies.) Therefore, we think it reasonable to say when this kind of language is used the inference (in the absence of some indication to the contrary) is that the intent was for the beneficiary to receive his full support from the trust estate. Our conclusions, under the language of this will, the surrounding circumstances shown and the action of the trustee pursuant to it prior to the death of Lillie's mother, are that this trust provision of the will should be construed as an absolute gift of support and maintenance for Lillie; that the discretion of the trustee is limited to the determination of the amount necessary for that purpose; and that the trustee is not authorized to withhold what is reasonably necessary for that purpose because of the provision made for Lillie in the subsequent will of her mother.

While this subsequent will is not before us in this case for construction, we point out that it has been held in this state, as noted by the Court of Appeals (287 S. W. 2d, l.c. 393) in Simpson v. Corder, 185

Mo. App. 398, 170 S. W. 357 that such a provision creates an obligation in the nature of a trust. (See also 1 Bogert on Trusts 236, 242, Sec. 31; Restatement of Trusts, Secs. 10 and 431; Scott on Trusts, Sec's. 10-16.6.) It would not seem unreasonable to believe that Lillie's mother, knowing about the trust under the previous will, the amount involved and how it was being used by the trustee, intended to provide either for the time when that fund was exhausted or to supplement it in some way. Upon the conclusions we have reached the judgments in the decree upon the stipulation and as to attorneys' fees should be set aside and these matters adjusted in the new final decree required.

The decree and judgment is reversed and remanded with directions to enter a decree in accordance with the views herein expressed. All concur.