Anne T. **LANAGAN**, Appellant,

v.

Linda Marie **RORKE**, Individually and as Trustee of the Daniel Arthur Rorke, Jr., Trust, Respondent.

No. 26736.

Missouri Court of Appeals, Southern District, Division One.

Dec. 5, 2005.

Motion for Rehearing or Transfer to Supreme Court Denied Dec. 27, 2005.

Application for Transfer Denied Feb. 28, 2006.

Rodney H. Nichols, Carnahan, Evans, Cantwell & Brown, P.C., Springfield, for appellant.

Lee Poppen, Kristoffer R. Barefield, Lathrop & Gage, L.C., Springfield, for respondent.

JOHN E. PARRISH, Judge.

Anne T. Lanagan (appellant) appeals a judgment from the probate division of the Circuit Court of Greene County, Missouri, that denied appellant's request to remove Linda Marie Rorke (respondent) as successor trustee of the Daniel Arthur Rorke, Jr., Trust and denied a claim for damages directed to distributions of principal from the trust that appellant contends were not in accordance with terms of the trust instrument. This court reverses and remands for further proceedings.

Daniel Arthur Rorke, Jr., (settlor) established the trust in 1989 as part of the estate plan of himself and respondent, his wife. At his death, the assets were to be divided and held in two trusts, a marital trust and a non-marital trust. This was done for purposes of Federal Estate Tax. Respondent executed a similar trust. Each spouse was initial trustee of his or her trust. Each spouse was designated the first successor trustee of the other's trust. They were lifetime beneficiaries of both trusts. Settlor's children were remainder beneficiaries of his trust. Settlor's children were not beneficiaries of respondent's trust.

Settlor's trust further provides with respect to appointment of trustees:

If [respondent] shall fail to qualify or cease to act or be unable to act as a Trustee hereunder, then DANIEL ARTHUR RORKE, III shall be appointed as successor trustee. If DANIEL ARTHUR RORKE, III shall fail to qualify, cease to act or be unable to act as Trustee hereunder, then MARY CATHERINE RORKE shall be appointed as successor trustee. If MARY CATHERINE RORKE shall fail to qualify, cease to act or be unable to act as Trustee hereunder, then JOSEPH LAWRENCE RORKE shall be appointed as successor trustee. If JOSEPH LAWRENCE RORKE shall fail to qualify, cease to act or be unable to act as Trustee hereunder, then ANNE THERESA RORKE shall be appointed as successor trustee. If all of the above-named individuals shall fail to qualify, cease to act or be unable to act as Trustee hereunder, then THE COMMERCE BANK OF SPRINGFIELD N.A., of Springfield, Missouri shall be appointed as successor trustee.

General Instructions in Article IV of the trust state:

(F) *Conflicts of Interest.* No individual while serving as Trustee hereunder shall participate in any decision concerning any discretionary payment from any part of my estate or any Trust created therefrom in which such individual may then have any beneficiary interest. Provided, however, that the above restrictions shall not apply where the beneficiary interest is contingent upon the survival by such Trustee of the death of the person for whose benefit the decision concerning the discretionary payment is made.

Settlor died in 1999. Respondent became successor trustee and sole lifetime beneficiary of his trust. (The trust agreement provided, however, that she would be referred to in the trust as "Trustees.") She has continued to act as its trustee since settlor's death.

The trust provided that trust assets, after payment of certain expenses, were to be divided into a marital trust and non-marital trust. The marital trust provided for distributions, as applicable to this appeal, after payment of certain administration expenses and estate taxes, as follows:

(a) The Trustees shall pay, at convenient intervals, but not less frequently than annually, all of the net income from the Marital Trust to Settlor's spouse.

(b) The Trustees may pay to Settlor's spouse so much of the principal of the Marital Trust as the Trustees in their discretion deem necessary to provide for the health, education, support or maintenance of Settlor's spouse (in accordance with the standard of living which was maintained during Settlor's lifetime).

(c) The Trustees shall pay, upon the request of Settlor's spouse such additional amount from the principal of the Marital Trust as may be requested by Settlor's spouse, provided, however, that such additional distribution under this Paragraph (c) shall not exceed, in any one (1) year, the greater of five (5%) percent of the principal value of the Marital Trust; or Five Thousand ($5,000.00) dollars.

. . .

(e) Upon the death of Settlor's spouse, the remainder of the property comprising the Marital Trust shall be distributed and paid over by the Trustees into the Non–Marital Trust. . . .

The non-marital trust has similar provisions to the marital trust. Differences include that the trustee is to pay over to the surviving spouse "so much of the net income from the Non–Marital Trust . . . as the Settlor's spouse shall request from

time to time." It further provides for a sum of $5,000 to be available to provide for settlor's dog if the dog is living following the deaths of settlor and respondent; for the remainder to be distributed to settlor's children or their descendants. The trust acknowledged that settlor had four children, Daniel Arthur Rorke, III, Mary Catherine Rorke, Joseph Lawrence Rorke, and Anne Theresa Rorke.

Respondent, as trustee, has made distributions of trust principal to herself from the marital trust for her "health, education, support or maintenance" pursuant to Article II, paragraphs B.3(b) and B.4(b). In making those distributions, respondent did not take into consideration other resources available for her use—resources she received following settlor's death—for those purposes for which the distributions were permitted. Distributions from the trust were not made in cash. Rather, shares of stock from the trusts were transferred by means of titling them in the name of respondent's individual trust.

The petition that initiated this action sought, among other relief, judgment against respondent for "any distributions of principal made to or for [her] benefit," plus interest and removal of respondent as trustee. The trial court's judgment states, as applicable to those issues:

IT IS THEREFORE THE JUDGMENT AND ORDER OF THIS COURT that the accounting of [respondent] as successor trustee of the Daniel Arthur Rorke Jr. Trust dated December 21, 1989, is approved through December 31, 2003, as follows:

(a) The amount remaining due to [respondent] from the trust for her health, education, support, and maintenance for the years 2002 and 2003 and the remaining distribution of five percent (5%) of principal for the years 2002 and 2003 shall be Fifty Thousand and 00/100 Dollars ($50,000.00). This amount may be paid whenever there are assets available in the trust to do so.

(b) Withdrawals by [respondent] for her health, education, support, and maintenance for years 2004 and thereafter shall be limited to her actual living expenses, but not to exceed Seventy-five Thousand and 00/100 Dollars ($75,000.00) per year. Other resources available to her shall not be considered.

. . .

IT IS FURTHER THE JUDGMENT AND ORDER OF THIS COURT that [respondent] shall continue as successor trustee of the Daniel Arthur Rorke Jr. Trust.

IT IS FURTHER THE JUDGMENT AND ORDER OF THIS COURT that any claim of petitioner not specifically provided for herein are [sic] denied.

. . .

### Point I

Point I alleges that the trial court erred in construing the trust in a manner that permitted respondent, as trustee, to make distributions of trust principal to herself for her health, education, support, and maintenance. Appellant argues that this finding was against the substantial weight of the evidence and was a misapplication of law. She asserts five bases, subparts a through e, as to why, in the context of the case, the trial court's finding was against the weight of the evidence and was a misapplication of law.

*Point I(a). Appellant asserts distributions of principal are discretionary; that conflict of interest provision prevents respondent from participating in decision because she has a beneficiary interest.*

Appellant argues in subpart (a) of Point I that the terms of the trust instrument provide that the distribution of principal

for respondent's health, education, support, and maintenance is a discretionary act. She contends, therefore, that the conflict of interest provision of the trust does not permit respondent, as trustee, to participate in the decision regarding whether a distribution should be made to her or, if a distribution is to be made, in what amount it should be.

■ The conflicts of interest provision of the trust to which subpart (a) refers is the language in Article IV, paragraph (F) that states, "No individual while serving as Trustee hereunder shall participate in any decision concerning any discretionary payment from any part of my estate or any Trust created therefrom in which such individual may then have any beneficiary interest." Appellant contends this prohibits respondent from making the decision as to what amount may be paid to her from the principal of the trust for her health, education, support, and maintenance; that respondent violated this provision of the trust by distributing principal to herself for those purposes.

The trial court's findings of fact included that respondent had served as trustee of the trust since settlor's death; that the distributions she made to herself from marital and non-marital trusts included "distribution of income for years 1999 through 2003, distribution from principal for her living expenses from 1999 through 2001, and in addition, distribution of five percent (5%) of the principal value of the trust for 1999 through 2001 and partial distribution for 2002." These payments were made pursuant to the language in Article II B.3(c), relating to the marital trust, and Article II B.4(c), relating to the non-marital trust, that provides:

(b) The Trustees *may* pay to Settlor's spouse so much of the principal of the Marital Trust *as the Trustees in their discretion* deem necessary to provide

for the health, education, support or maintenance of Settlor's spouse (in accordance with the standard of living which was maintained during Settlor's lifetime). [Emphasis added.]

The trial court's findings of fact state that "[u]nder the terms of the trust, the Court finds that [the provision by which respondent was entitled to resources that provided for her health, education, support, or maintenance] does provide [respondent] with a gift of her health, education, support, and maintenance from the principal of the martial [sic] and non-marital trusts without consideration of other resources available to her." The findings of fact that address the conflict of interest provision of the trust state:

. . .

32. [Appellant] alleges that the paragraph entitled "Conflict of Interest" in Article IV(F) prohibited [respondent] from making distribution to herself of her health, education, support, and maintenance and that by making such distributions, she has breached her fiduciary responsibilities and should be removed as trustee of the trust.

33. [Appellant's] accounting expert, David Kessler, testified that the language used to determine distributions to [respondent] for her health, education, support, and maintenance were limited by an ascertainable standard, which is the standard of living which was maintained during settlor's lifetime.

34. The language of this provision is a limiting provision required under a two-trust division to take advantage of estate tax exemptions. It is the purpose of the trust to disqualify the non-marital trust from the marital deduction thereby utilizing the personal exemption of both husband and wife through both estates. It was not [settlor's] intentions by this provision to require the appointment of

another trustee, and for [respondent] to be required to seek the approval of such trustee before making normal expenditures for her health, education, support, and maintenance.

35. Since there is an ascertainable standard which is re-viewable [sic] by the Court, the conflict of interest provision relating to discretionary distributions is not applicable.

. . .

As a finding of fact, the trial court stated the legal conclusion that "[t]he conflict of interest provision is not applicable to this inter vivos trust." It further stated, as a finding of fact, "[Respondent] shall continue as trustee of the trust but annual distributions to herself from principal for her health, education, support, and maintenance beginning with the year 2004 shall not exceed her actual living expenses or Seventy-five Thousand and 00/100 Dollars ($75,000.00), whichever is less. This amount is consistent with her standard of living prior to her husband's death."

The trial court's conclusions of law include:

Based upon the circumstances surrounding the creation of the trust and consideration [of] the trust agreement in its entirety, it was the [settlor's] intentions to grant his surviving spouse an absolute gift of support from the principal of the trust without the consideration of any other financial resources of the surviving spouse.

Appellant argues that distributions of principal to respondent made pursuant to Articles II B.3(b) and II B.4(b) are discretionary payments; that, therefore, the conflicts of interest provision in the trust, Article IV(F), prohibited respondent from participating in any decision with respect to payments made pursuant to those provisions. Articles II B.3(b) and II B.4(b) provide that the "[t]rustees may pay to

Settlor's spouse [i.e., respondent] so much of the principal of the Marital Trust as the Trustees in their discretion deem necessary to provide for the health, education, support or maintenance of Settlor's spouse [respondent] (in accordance with the standard of living which was maintained during Settlor's lifetime)."

Appellant concedes that an ascertainable standard is provided by the terms of the trust that identifies the purposes for which trust principal may be withdrawn, i.e., "for the health, education, support or maintenance of [respondent]." Appellant argues the trial court erred in concluding the terms of the trust granted respondent an absolute gift of support from principal. Appellant further argues that the ascertainable standard imposed on the purposes for which principal could be paid to respondent imposes restrictions on the amount that could be paid respondent.

The trust states that the trustee "may" encroach upon the trust principal for the purposes stated. "Use of the word 'may' grants Trustees discretion to encroach upon the principal when and in the amount they consider necessary or advisable." *Hertel ex rel. Hertel v. Nationsbank, N.A.,* 37 S.W.3d 408, 411 (Mo.App.2001). Here, as in *Hertel,* the trustee's right to encroach upon principal is not absolute. It is discretionary in that the right to encroach on principal is limited to amounts deemed necessary for respondent's health, education, support, or maintenance.

Appellant argues that Article IV(F) denies respondent authority to determine the distributions from principal permitted by Article II paragraphs B.3(b) and B.4(b) because it prohibits an "individual while serving as Trustee" from participating "in any decision concerning any discretionary payment from any part of [the] estate or any Trust created therefrom in which such

individual may then have any beneficiary interest." Respondent had a beneficial interest in the trust. The payment respondent would receive is discretionary in that the amount to be paid is determined on the basis of the standard stated in Article II, paragraphs B.3(b) and B.4(b). Thus, Article IV(F) prohibits respondent from making that determination. Subpart (a) of Point I is well-taken. The trial court erred in its conclusion to the contrary.

In determining the issue presented by subpart (a) of Point I, this court concluded that the conflict of interest provision of the trust applied; that the trial court erred in finding otherwise. No further discussion regarding other subparts of Point I is required. Point I is granted.

### Point II

Point II alleges that the trial court erred in concluding that it was settlor's intention that respondent's other resources should not be considered in determining her needs for purposes of ascertaining the amount of principal permitted to be distributed to respondent pursuant to Article II, paragraphs B.3(b) and B.4(b). Appellant asserts five bases, subparts (a) through (e) as to why, in the context of the case, the trial court's finding was against the weight of the evidence and was a misapplication of law.

*Point II(a). Appellant asserts in subpart (a) that because distributions made under paragraphs B.3(b) and B.4(b) are expressly conditioned on respondent's need, settlor's intentions are not relevant.*

■ Subpart (a) of Point II is directed to the trial court's conclusion of law that "it was the [settlor's] intentions to grant [respondent] an absolute gift of support from the principal of the trust without the consideration of any other financial resources of [respondent]." The question presented, whether the gift of support was an absolute gift, is the same question that was presented and addressed in *Winkel v. Streicher,* 365 Mo. 1170, 295 S.W.2d 56 (banc 1956). *Winkel* held that if an absolute gift of support was made, private income of a beneficiary cannot be considered. 295 S.W.2d at 61. *Winkel* concluded that no general rule was available for determining the extent of the gift of support other than to ascertain the intention of the settlor under the circumstances of the particular case. *Id.* The intent of a settlor is gathered from the words used in the document being construed by giving the words their usual and ordinary meaning unless there is something in the instrument that deflects from that meaning. *Lehr v. Collier,* 909 S.W.2d 717, 723 (Mo.App.1995). *Winkel* determined "that language directing a trustee to pay to a beneficiary so much as is necessary for his [or her] support would ordinarily be understood by a [settlor] to mean that the beneficiary was to receive his [or her] full support from the trust estate." 295 S.W.2d at 61–62.

■ The language of the trust that is the subject of this appeal provides that respondent may receive so much of the principal as, in the discretion of the Trustee, is deemed "necessary to provide for the health, education, support or maintenance of [respondent]." This court concludes, consistent with *Winkel,* that settlor's intent was for respondent to receive her full support from the trust estate; that the gift of funds for respondent's health, education, support, or maintenance was an absolute gift albeit that, as determined with respect to Point I, respondent may not participate in the decision regarding what amount is necessary to be paid respondent to provide for those needs. The trial court's determination that the award of an amount necessary to provide for the needs stated in the trust agreement was

an absolute gift is supported by the language in the trust instrument. Nothing within the four corners of the trust instrument deflects from that meaning. Respondent's other resources need not be considered in determining the amount to be paid for that purpose from principal. The trial court's finding is not against the substantial weight of the evidence nor a misapplication of law. Subpoint (a) of Point II is denied.

*Point II(b)-(d). Appellant asserts in subparts (b) through (d) that the trust language does not support a finding that its terms were ambiguous; that extrinsic evidence of settlor's intent would not have been permissible; and that the trial court made no finding that any provision of the trust was ambiguous.*

The claim of ambiguity is not addressed for the reason that the issues on appeal are resolved on other grounds. Subparts (b) through (d) of Point II are moot.

*Point II(e). Appellant asserts in subpart (e) that there was no evidence that supported the finding that settlor intended an absolute gift of support and maintenance.*

As found with respect to subpart (a) of Point II, the trust instrument, by the language it employed, made an absolute gift for respondent's health, education, support, or maintenance. Subpart (e) is denied. Point II is denied.

### Point III

Point III alleges that the trial court erred in finding that distributions of trust principal that respondent made to herself were in accordance with the standard of living maintained during settlor's lifetime. Appellant includes subparts (a) through (c) in which she states why, in the context of the case, the trial court's determination was erroneous.

*Point III(a). Appellant asserts in subpart (a) that this issue was not properly before the trial court for determination; that the issue for the trial court to determine was whether respondent, as trustee, had authority to make discretionary distributions, not what amount was proper.*

■ Appellant brought this action by a petition filed in the Probate Division of the Circuit Court. The petition asserted that respondent, as trustee, had failed to perform various duties appellant asserts were required by the terms of the trust and by reason of respondent's fiduciary duties. The petition sought (1) an accounting by respondent "for all property received by [respondent], as Trustee, from and after March 28, 1999 (being the date of [settlor's] death) to date, for all investment and reinvestment of such property and for all income, receipts and disbursements;" (2) judgment against respondent in favor of residuary trustees "in an amount equal to the value of any distributions of principal made to or for the benefit of [respondent], together with pre- and post-judgment interest thereon . . . ;" (3) removal of respondent as trustee; (4) punitive damages; and (5) costs.

The request for an accounting was heard separate from the rest of the case. Docket entries included in the legal file component of the record on appeal recite that hearing was held, evidence was heard, and the part of the case for an accounting was taken under advisement September 30, 2002. On December 10, 2002, a docket entry states, "JUDGMENT ORDERS RESP TO MAKE ACCOUNTING." The judgment rendered in this case recites that the accounting was approved through December 31, 2003, and states amounts reflected by that accounting. The propriety of some of those amounts, and the manner in which decisions were made by respondent, are challenged in this appeal.

Appellant argues regarding subpart (a) of Point III that "[t]he amount, if any, which [respondent] may have been entitled to receive was not an issue before the Court for determination, as is evidenced by the pleadings filed by the parties." Appellant's brief continues:

The Respondent's authority to make the distributions in question, and the manner in which they were to be made, were the issues before the trial court for determination and not the amount, if any which the Respondent may have been entitled to receive, or what her standard of living was during the [settlor's] lifetime. Notwithstanding this, the trial court, *sua sponte*, found that the distributions of Trust principal made by the Respondent were in accordance with the Respondent's standard of living maintained during [settlor's] lifetime, thereby placing the court in the position of trustee contrary to the terms of the Trust. . . .

Neither the petition nor the counterclaim asserted by respondent raised the issue of what amount, if any, respondent was entitled to receive.[1] Rather, the issue was whether respondent, as trustee, was permitted by the terms of the trust to make the determination of whether payments would be made to her. This issue was addressed in Point I. As determined regarding subpart a of Point I, by reason of Article IV(F) of the trust, respondent was disqualified from participating in the decision as to what amount of support she was entitled to receive from the principal of the trust. The petition did not seek determination of amounts to which respondent may have been entitled in past years or amounts that she would be entitled to receive in future years.[2] "The powers of a court of equity, though broad, are limited to the claim for relief and issues made by the pleadings." *Matter of Heisserer*, 797 S.W.2d 864, 873 (Mo.App.1990). Subpart (a) of Point III is well-taken.

*Point III(b). Appellant asserts in subpart (b) that determination of an appropriate amount to be distributed was to be made by a trustee other than respondent; that respondent's need was to be based after considering other resources available to respondent.*

The issues posed by subpart (b) were heretofore determined. That part of Point III is moot.

*Point III(c). Appellant asserts in subpart (c) that the trial court's finding was an abuse of discretion and against substantial evidence because the applicable standard of living was not established and distributions taken by respondent were excessive by reason of other resources available to her.*

Subpart (c) is moot. The issues presented have heretofore been addressed.

Point III is granted in part and denied in part. The issue of the amount of support respondent would receive was not before the trial court for determination and is a decision in which respondent may not participate as trustee pursuant to Article IV(F). The allegation in Point III that respondent's other resources must be considered in determining the amount of support she may receive from the trust is denied.

---

1. There was no request for declaratory relief. Had a party wished a determination of specific rights of the trustee or any beneficiary, pleadings could have sought such relief. *See, e.g., Seltzer v. Schroeder*, 409 S.W.2d 777, 782 (Mo.App.1966).

2. The record on appeal does not reveal how a court could possess foresight as to what a beneficiary's future needs would be so as to declare an amount to be paid in future years.

## Point IV

Point IV alleges that the trial court erred in finding that respondent's actions had not damaged the trust and that the trust owes respondent money. As with the first three points, appellant includes subparts in which she states why, in the context of the case, the trial court's determination was erroneous. She asserts subparts (a) and (b). They may be addressed together.

■ Appellant alleges that respondent was prohibited from making distributions to herself for her health, education, maintenance, or support by reason of her beneficial interest in the trust (subpart a); that respondent made unauthorized distributions from 2000 to 2003 of $299,348.13 (subpart b). As previously discussed, respondent was disqualified from participating in the decision regarding the amount to which she was entitled for her health, education, maintenance, or support. For that reason, distributions respondent made as trustee to herself for those purposes were not authorized. A trustee's rights as beneficiary under a trust do not excuse or justify unauthorized withdrawals from that trust. *Guirl v. Guirl,* 708 S.W.2d 239, 245 (Mo.App.1986). The effect of the withdrawals on the trust is to be determined by the trial court on remand and new trial consistent with this opinion. To that extent, Point IV is granted.

## Disposition

The judgment is reversed. The case is remanded for further proceedings consistent with this opinion. The trial court may, in its discretion, permit further evidence for the purpose of entering judgment or making determinations necessary to render judgment.

Upon remand, judgment shall enter deciding the issues presented by the pleadings in this case including:

(a) Approval or disapproval of the accuracy of the accounting heretofore presented by respondent with respect to its disclosure of the uses made of trust assets;

(b) Determination of the amount heretofore erroneously paid respondent from trust principal purportedly on the basis of Article II B.3(b) and Article II B.4(b) as amounts necessary for her health, education, support, or maintenance and providing direction for repayment of such amount to the trust accounts;

(c) Denial of appellant's request to remove respondent as trustee; provided however, so long as respondent continues as trustee, an additional trustee shall be appointed, consistent with the terms of the trust for selection of trustees, for the limited purpose of determining what amounts, if any, respondent shall have been entitled to receive for past years' necessary health, education, support, or maintenance expenses, as permitted by Article II B.3(b) and Article II B.4(b), and for the purpose of determining, from time to time in future years, the amounts to which respondent may be entitled for those needs;

(d) Denial of punitive damages;

(e) Assessment of costs.

PREWITT, P.J., recused.

RAHMEYER, J., concurs.

SHRUM, P.J., concurs in part and dissents in part in separate opinion.

KENNETH W. SHRUM, Presiding Judge, concurring in part and dissenting in part.

I respectfully dissent, in part, from the principal opinion.

First, I disagree with and dissent from the principal opinion to the extent, if any, that it purports to hold that Settlor em-

powered the trustees to distribute non-marital trust corpus to Respondent for any purpose. The trial court found that the "marital trust was expended by year end 2000." The record supports that finding. Where, then, is authority for distributing to Respondent corpus from the other trust, i.e., the non-marital trust corpus? I can find no such authority. Certainly, it is not in Article II B.4 which deals with distributions from the non-marital trust. It reads:

> "4. *Distributions from Non–Marital Trust*. The Trustees shall hold, administer and distribute the property comprising the *Non–Marital* Trust in the following manner:
>
> "(a) If Settlor's spouse shall survive Settlor, the Trustees shall pay at convenient intervals ... so much of the net income from the *Non–Marital* Trust to Settlor's spouse as the Settlor's spouse shall request from time to time.
>
> "(b) The Trustees may pay to Settlor's spouse so much of the principal of the *Marital Trust* as the Trustees in their discretion deem necessary to provide for the health, education, support or maintenance of Settlor's spouse (in accordance with the standard of living which was maintained during Settlor's lifetime.)
>
> "(c) The Trustees shall pay, upon the request of Settlor's spouse such additional amount from the *principal of the Marital Trust* as may be requested by Settlor's spouse, provided, however, that

such additional distribution under this Paragraph (c) shall not exceed, in any one (1) year, the greater of five (5%) percent of the principal value of the *Marital Trust;* or Five Thousand ($5,000.00) dollars." (Emphasis supplied.)

By the express terms of subsections (a), (b), and (c) of Article B.4, net income is the only distribution authorized for Respondent from the *non-marital* trust. Distribution of the principal from the non-marital trust is not authorized by Article II B.4(b) or Article II B.4(c); those subparagraphs only authorize corpus distributions from the *marital* trust. To the extent the parties, the trial court, or the principal opinion read this provision differently, I simply disagree.

Moreover, any attempt to explain away the clear language of Article II B.4(2) and Article II B.4(3) by claiming ambiguity in the document is, in my opinion, unavailing. The trial court appears to have found the instrument unambiguous.[1] On appeal none of the parties argue that the trust was ambiguous. To the contrary, in Point II, Appellant specifically argues that the trust is not ambiguous and Respondent appears to agree. Thus, Respondent in her brief asserts, "The Trial Court's interpretation of the trust at issue is supported by the terms of the trust instrument and does not depend on extrinsic evidence."

---

1. At trial, while considering admissibility of testimony of the lawyer who drafted the trusts, the judge stated: "Well, what I've read so far, we've heard fairly straight forward paragraphs that I've seen in many trust documents. I don't see an ambiguity in them at this point." Later, the trial judge told the parties that he would let the trust preparer testify—not as an offer of proof—but with the understanding that he would not consider the testimony unless he found an ambiguity. Although the trial judge did not expressly rule the trust unambiguous, the judgment, when

fairly read, indicates that the judge's findings and conclusions were based on the language within the trust, and not on the trust preparer's testimony about Settlor's intent and meaning of the language used. I am confirmed in this by the following, which was the first conclusion of law in the judgment: "Absent an ambiguity, ... the instrument and evidence of grantor's intent is generally inadmissible." All of the above persuades me the trial judge viewed the trust language as unambiguous.

Arguably, the ambiguity issue is settled. If that view is correct, it is clear that Respondent was never entitled to corpus distribution from the non-marital trust.

Second, I dissent from that part of the principal opinion which holds that Settlor made an absolute gift of marital trust corpus to Respondent "for respondent's health, education, support, or maintenance" and that "Respondent's other sources need not be considered in determining the amount to be paid for that purpose from principal[ ]" of the marital trust. I dissent because, in my view, the *Winkel* case (upon which the principal opinion is grounded) is distinguishable. I would hold that the analysis and the result in *Hertel ex rel. Hertel v. Nationsbank N.A.*, 37 S.W.3d 408, 411 (Mo.App.2001), should govern here.

The corpus encroachment language in *Winkel* was couched in mandatory terms, i.e., it directed that trustee "shall pay the net income and any part of the corpus of the estate ... as [trustee] in his sole discretion deems necessary ... for the support [of the named beneficiary]." 295 S.W.2d at 57. The *Winkel* opinion recounted at length the relevant circumstances underlying the creation of the subject trust and reviewed the conflicting authorities on the issue of whether a beneficiary is entitled to support out of the corpus of a trust fund when he has other resources. Based on that analysis and the mandatory language quoted above, the *Winkel* court concluded that the testator intended an absolute gift of support to the beneficiary; that the discretion of the trustee was limited to deciding the amount necessary for that purpose; and that the trustee was not authorized to consider other income resources that the beneficiary might have. 295 S.W.2d at 62.

In so deciding, the *Winkel* court embraced the view that when " 'the trustee is *directed* to pay to the beneficiary or to apply for him so much [of the trust corpus] as is necessary for his maintenance or support, the inference is that the settlor intended that [the beneficiary] should receive his support from the trust estate, even though he might have other resources.' " 295 S.W.2d at 60–61 (quoting Scott on Trusts, 2d Ed sec. 128) (emphasis supplied).

The *Hertel* court reached a different result than the *Winkel* court, but did so because the facts were different. The *Hertel* trust read, *inter alia:*

"[T]he Trustees shall have power in their discretion to encroach upon the principal of this share of the trust estate during the life of Grantor's daughter for her health, education, maintenance and support and such encroachments may be made from time to time and in such amounts as the Trustees may consider necessary or advisable under the circumstances."

37 S.W.3d at 410–11.

This language was interpreted by the eastern district as not making an absolute gift of trust corpus; consequently, the *Hertel* trustee "should not be denied the opportunity to consider beneficiary's other financial resources when deciding whether it is appropriate to encroach upon the trust principal." *Id.* at 413. The *Hertel* court explained:

"[T]his provision ... grant[s] Trustees the power to encroach upon the principal in their discretion. Use of the word 'may' grants Trustees discretion to encroach upon the principal when and in any amount they consider necessary or advisable.

"Further, we find that the 'necessary or advisable' language applies to the amount of the encroachment as well as to its timing. Thus, Trustor intended

Trustees to exercise their judgment and discretion in determining whether an encroachment for the health, education, maintenance, and support of Beneficiary is necessary or advisable, and whether the amount requested is necessary or advisable."

37 S.W.3d at 411.

The *Hertel* court also found its holding was not inconsistent with *Winkel:*

"Whereas the *Winkel* trust provided the trustee '*shall* pay the net income and any part of the corpus,' this trust states 'such encroachments *may* be made.' Moreover, the placement of the discretionary language in *Winkel* suggests the discretion applies only to the amount of principal to be paid out. The discretionary language herein is applicable to the Trustees' general power to encroach."

37 S.W.3d at 413.

I believe the "corpus encroachment" language here is more akin to that in Hertel; consequently, the *Hertel* analysis should govern. My reasons follow.

First, the "corpus encroachment" provision in *Winkel* was in a single, mandatory paragraph, i.e., the trustee "shall pay the net income and any part of the corpus." In contrast, here (as in *Hertel*), directions about paying net income and corpus are in separate paragraphs. Specifically, Article II B.3(a) of this trust provided the trustee "*shall* pay the net income" to Respondent, whereas Article II B.3(b) recites that trustee "*may* pay" so much of the corpus "as the trustees *in their discretion deem necessary*" for Respondent to maintain the standard of living she had during Settlor's lifetime. (Emphasis supplied.)

Second, Article II B.3(b) contains only discretionary language. In my view, the discretionary language that permeates Article II B.3(b) bespeaks an intent by Settlor not to make an absolute gift of corpus, but rather to authorize invasion of marital trust corpus only in case of need.

Third, my view that *Winkel* is distinguishable is strengthened by examining the relevant surrounding circumstances underlying the creation of these respective trusts. The *Winkel* court found it noteworthy that the trust purpose was to provide support and maintenance for a beneficiary who was living "at the Emmaus Home;" that this and the uncertainty about the beneficiary's sources of support, amounts of support, and future needs supported an inference that the *Winkel* trustor was not primarily interested in preserving an estate, but rather his focus was on making provision for the needy relative. In sharp contrast, the trust here was simply part of an estate plan; its purpose was minimizing federal estate tax obligations. In my view, that explains the discretionary language used here.

Fourth, many other circumstances discussed and deemed relevant in *Hertel* also exist here. Illustrative is the fact that both trusts have "spendthrift" provisions. *Id.* at 413. This and other trust provisions discussed in *Hertel* (which are also in the instant trust) show that Settlor intended to give the trustees power and authority to preserve and maintain the trust corpus while also allowing the trustee to accommodate for unforeseen events.

In sum, I find merit in Appellant's second point. I would find that the Settlor intended to make an absolute gift of income to Respondent from both the marital and non-marital trusts, coupled with a provision that the principal of the marital trust could only be invaded if needed. Consequently, I would hold that the trustees must factor in Respondent's other financial resources and income when deciding what part of the marital trust corpus, if any, was properly paid to Respondent per Article II B.3(b). I would hold that no

part of the non-marital trust corpus is payable to Respondent.  In all other respects, I agree with the principal opinion.